## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| MARK JENNINGS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03-CV-4087 |
| STATE OF ILLINOIS, by its Departmental Unit, THE ILLINOIS DEPARTMENT OF CORRECTIONS, | ) ) ) ) ) |
| Defendant. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, by and through its attorney, Lisa Madigan, Attorney General of the State of Illinois, and for its Memorandum of Law in Support of Motion for Summary Judgment represents unto the Court as follows:

**I.     INTRODUCTION**

Plaintiff was employed by the Illinois Department of Corrections as a correctional officer at the East Moline Correctional Center ("EMCC") in East Moline, Illinois. He was discharged for allegedly smuggling cigars into EMCC and trading them with state prisoners for cigarettes, athletic shoes, boots, a beard trimmer, and other goods from the prison commissary in violation of various departmental rules. Plaintiff's union representatives filed a grievance on his behalf, and an arbitrator determined that the allegations levied against him were credibly supported by the testimony of three inmates and that discharge was the appropriate level of discipline. Plaintiff filed this lawsuit as a result, claiming that the Department had discriminated against him in violation of Title VII of the Civil Rights Act of

1

1964. Specifically, Plaintiff claims that he is a Mexican-American and that the Department disciplined him more harshly than similarly-situated black and white employees on account of his race or national origin. At the same time that Plaintiff argues he was disciplined more harshly than similarly-situated black and white correctional officers (and, thereby, effectively concedes that he did engage in trading and trafficking), Plaintiff suggests that the Department's decision to discharge him was based solely on the fraudulent testimony of three inmates and that he did not, in fact, engage in trading and trafficking. In redress of his claims, Plaintiff seeks compensatory damages, including costs and attorney's fees, and to be immediately reinstated to his former position or to receive front pay until a correctional officer's position becomes available.

To the extent that Plaintiff argues in this case that he was disciplined more harshly for trading and trafficking than similarly-situated black and white employees, he cannot succeed because he has not presented evidence demonstrating that he is truly comparable to the employees whom he claims are similarly situated to him. To the extent that Plaintiff argues he did not engage in trading and trafficking and that the Department should not have elected to discharge him, he cannot succeed because he has not presented evidence suggesting that he was meeting the Department's legitimate expectations. Finally, to the extent that Plaintiff raises either one of these two claims, he cannot succeed because he has not presented evidence demonstrating that the Department's stated reason for discharging him was pretextual.

## II.   UNDISPUTED MATERIAL FACTS

1.  Plaintiff, formerly a correctional officer at EMCC, was alleged to have smuggled cigars into the prison compound and to have traded them with state prisoners for cigarettes and other goods from the prison commissary. (Pl.'s Compl. at 2, ¶ 5).

2

2. Trading and trafficking is prohibited by Section 120.70 of the Illinois Department of Corrections Rules. Ill. Admin. Code tit. 20, § 120.70 (2002).

3. An employee's failure to abide by departmental rules may result in his termination. *Id*. at § 120.100.

4. The Department investigated the allegations levied against Plaintiff, an Employee Review Board ("ERB") hearing was conducted, and Plaintiff was issued a 30-day suspension pending discharge. (Def.'s Ex. 1, Jennings ERB Hearing Recommendation at 626); (Def's Ex. 2, Emerich Aff.); (*see also* Def.'s Ex. 3, Jennings Dep. at 9, 14-15); (*see also generally* Def.'s Ex. 4 Jennings Internal Investigations Report).

5. Plaintiff's discharge was approved by the Illinois Department of Central Management Services, and he was discharged. (Def.'s Ex. 5, Jennings Discharge Letter).

6. Plaintiff's union representatives filed a grievance on his behalf alleging that he had been discharged without cause. (Def.'s Ex. 6, Jennings Contract Grievance); (*see also* Def.'s Ex. 3, Jennings Dep. at 10-11).

7. Plaintiff's grievance was submitted to an independent arbitrator, Edwin Benn, who determined that Plaintiff had engaged in trading and trafficking and that discharge was the appropriate level of discipline in light of the severity of Plaintiff's misconduct and his recent disciplinary history. (Def's. Ex. 7, Jennings Arbitration Opinion and Award at 9); (*see also* Def.'s Ex. 3, Jennings Dep. at 12).

8. Mark Koster, a white man, is a correctional officer at EMCC, who was accused of trading and trafficking. (Def.'s Ex. 8, Koster ERB Hearing Recommendation at 616).

9. Mr. Koster appeared before the ERB and was issued a 30-day suspension pending discharge. (*Id.* at 619).

10. Although Mr. Koster was eventually discharged, he entered into a settlement agreement with the Department prior to arbitration, and his discharge was subsequently reduced to a suspension. (Def.'s Ex. 9, Koster Resolution Prior to Arbitration Agreement).

11. Robert Huskey, a white man, is a correctional officer at EMCC, who was accused of trading and trafficking. (Def.'s Ex. 10, Huskey ERB Hearing Recommendation at 621).

12. Mr. Huskey appeared before the ERB and was issued a 30-day suspension pending discharge. (*Id.* at 623).

13. Although Mr. Huskey was eventually discharged, he entered into a settlement agreement with the Department prior to arbitration, and his discharge was subsequently reduced to a suspension. (Def.'s Ex. 11, Huskey Resolution Prior to Arbitration Agreement).

14. Belinda Rusch, a black woman, is a Leisure Activity Specialist II at EMCC who was accused of trading and trafficking. (Def.'s Ex. 12, Rusch ERB Hearing Recommendation at 611).

15. Ms. Rusch appeared before the ERB and was issued a 30-day suspension pending discharge. (*Id*. at 613).

16. Although Ms. Rusch was eventually discharged, she argued her case before an independent arbitrator, Herman Torosian, who reduced her discharge to a suspension, in part because of her scant past disciplinary history and a lack of any recent discipline. (Def.'s Ex. 13, Rusch Arbitration Award at 645, 645 n. 8, 646).

### III. APPLICABLE LAW

#### A. SUMMARY JUDGMENT

Summary Judgment is proper if the pleadings, answers to interrogatories, depositions, admissions, and affidavits show that no genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A party moving for summary judgment will prevail if it shows that the nonmoving party has no evidence in support of an issue which it must prove at trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18 (1986). Once the moving party has carried this burden, the nonmoving party must produce evidence that would reasonably permit the finder of fact to rule in his favor on a material question. *Liberty Lobby*, 477 U.S. at 248, 256. "Absent evidence presenting a factual issue on a material question, summary judgment must enter." *Cliff v. Board of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 409 (7th Cir. 1994).

#### B. TITLE VII

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). There are two methods by which an employee can prove that he was discharged because of his race or national origin in violation of Title VII. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). Under the "direct method" of proof, an employee must show "either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th 2001); *accord Ineichen v. Ameritech*, No. 04-3094, 2005 WL 1367203, at *4 (7th Cir. June 10, 2005).

If an employee presents no direct or circumstantial evidence of discrimination, his Title VII claims will instead proceed under the indirect method of proof. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). An employee will have stated a prima facie case of discrimination under the "indirect method" if he presents evidence demonstrating that he is a member of a protected class, that he was performing to his employer's legitimate expectations, that he suffered an adverse employment action, and that his employer treated similarly situated employees of a different race or national origin more favorably. *Ineichen*, 2005 WL 1367203, at *4; *cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

### 1.  LEGITIMATE EXPECTATIONS

An employee is not required to be an "ideal employee" in order to meet his employer's legitimate expectations. *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 729 (8th Cir. 2002). He must only act in such a way as his employer "could legitimately expect" him to act. *Id*. An employee will fall short of this standard if he neglects to perform the basic requirements of his job. As the Seventh Circuit Court of Appeals has explained, "If your job is to document maintenance problems, arrange for their correction, and conduct fire drills, and you fail to do these things, you are not performing up to your employer's legitimate expectations. . . ." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997); *accord Brummett v. Lee Enters., Inc.*, 284 F.3d 742, 745 (7th Cir. 2002) (observing that an employee who must drive for his job, but who has lost his driver's license because of alcohol-related convictions, cannot meet his employer's legitimate expectations).

A narrow exception to the legitimate expectations requirement applies in those cases where an employee acknowledges that he was not meeting his employer's legitimate

expectations, claiming instead that he was disciplined more harshly than other employees because of his race or national origin. *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). In such cases, an employee is not required to present evidence demonstrating that he has satisfied the legitimate expectations requirement as it will have been subsumed by the similarly-situated requirement and the pretext analysis. *See id.*

### 2. SIMILARLY SITUATED

In order to be similarly situated, the Seventh Circuit has observed, two employees "must be very similar indeed." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *accord Ineichen v. Ameritech*, No. 04-3094, 2005 WL 1367203, at *3 (7th Cir. June 10, 2005). In disciplinary cases, a plaintiff "must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* "Differentiating or mitigating circumstances" include, among other things, individual "disciplinary records" as well as "different levels of experience and job responsibilities." *Greer v. Amesqua,* 212 F.3d 358, 370 (7th Cir. 2000) (disciplinary records); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (job responsibilities). Finally, an employee must do more at the summary judgment stage than simply assert that his employer treated similarly situated employees of a different race or national origin more favorably, as "uncorroborated generalities are insufficient to support a Title VII claim." *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 614-15 (7th Cir. 2001). The Seventh Circuit has repeatedly "upheld the entry of summary judgment against a Title VII plaintiff who has presented only his own

7

uncorroborated, conclusory statements that similarly situated co-workers were treated differently." *Id.*

### 3. PRETEXT

Once an employee states a prima facie case of discrimination under the indirect method of proof, the burden of production shifts to his employer to present a legitimate, nondiscriminatory reason for the challenged employment decision. *Stutler v. Illinois Dep't of Corrs.*, 263 F.3d 698, 702 (7th Cir. 2001); *accord McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The employer's "burden of proof in this analysis is 'quite light', and 'the mere articulation of the reason . . . puts the onus back on the plaintiff to prove pretext." *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999) (quoting *Pilditch v. Board of Educ.*, 3 F.3d 1113, 1117 (7th Cir.1993)).

If the employer presents a legitimate, nondiscriminatory reason, the employee must then produce credible evidence showing that the true reason for the employment action was discriminatory and that the stated reason is pretextual. *Stutler*, 263 F.3d at 702; *accord McDonnell Douglas*, 411 U.S. at 802. Absent direct evidence of pretext, an employee may demonstrate that the stated reason for his discharge was pretextual by submitting evidence demonstrating that it "was factually baseless, not the actual motivation for the discharge, or insufficient to motivate the discharge." *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). That said, an employee must do more than simply present evidence suggesting that the decision to discharge him was "mistaken, ill considered, or foolish." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Such evidence does not show pretext because it does not show that an employer did not honestly believe the facts on which its decision was based. *Ineichen v. Ameritech*, No. 04-3094, 2005 WL 1367203, at *3 (7th Cir. June 10, 2005) (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471

(7th Cir. 2000)); *accord Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("The fact that [an] employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual."). An employee must instead "produce evidence from which a rational factfinder could infer that [his employer] lied about its proffered reasons. . . ." *Weisbrot v. Medical College of Wis.*, 79 F.3d 677, 682 (7th Cir. 1996). "Our only concern with respect to pretext," the Seventh Circuit has observed, "is the honesty of an employer's explanation." *Dyrek*, 334 F.3d at 598.

## IV.     ARGUMENT

Plaintiff's claims in this case must fail because he has not submitted evidence (A) establishing a prima facie case of discrimination under the indirect method of proof or (B) demonstrating that the Department's stated reason for discharging him was pretextual.

### A.     PLAINTIFF HAS NOT SUBMITTED EVIDENCE ESTABLISHING A PRIMA FACIE CASE OF DISCRIMINATION.

Although Plaintiff suggests that the Department's decision was based on his race or national origin, he has produced no direct or circumstantial evidence in support of that claim, having elected instead to make his case by means of the indirect method of proof first described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In that vein, he states that several other Department employees who are not Mexican-American were previously alleged to have engaged in trading and trafficking without being discharged.

To the extent that Plaintiff argues he did not engage in the trading and trafficking of contraband and that the Department simply charged him with such misconduct in order to seek his discharge, he cannot prevail. He cannot do so because an investigation was conducted by the Department and an ERB hearing held, and in the wake of those two

events, the Department found that Plaintiff had, in fact, engaged in trading and trafficking. (Undisputed Material Facts #1-5).[1]  What is more, Plaintiff subsequently argued his case before an independent arbitrator who likewise determined that Plaintiff had engaged in trading and trafficking and also that discharge was the appropriate level of discipline in light of the severity of Plaintiff's misconduct and his recent disciplinary history.  (UMFs #6-7). A correctional officer who has been found to have fraternized with state prisoners in such a way, placing the safety and security of the institution at risk in the process, cannot be meeting the legitimate expectations of his employer.

Nor can Plaintiff prevail to the extent that he argues he was disciplined more harshly than other employees for engaging in trading and trafficking because he has not presented evidence demonstrating that he is truly comparable to the employees he claims are similarly situated to him.  Like Plaintiff, Mark Koster and Robert Huskey were correctional officers at EMCC who were accused of having engaged in trading and trafficking.  (UMFs #8, #11).  Plaintiff cannot demonstrate that he was disciplined more harshly than they were for the simple reason that they, too, were discharged for their misconduct.  (UMFs #9-10, #12-13).  Unlike Plaintiff, however, they settled their grievances with the Department rather than proceeding to arbitration.  (UMFs #10, #13).  Belinda Rusch is similarly incomparable to Plaintiff.  Not only was she a Leisure Activity Specialist II at the time that she was alleged to have engaged in trading and trafficking rather than a correctional officer, she appeared before a different arbitrator and had no recent disciplinary history.  (UMFs #14-16).  All of this said, the Department similarly discharged her, and it was only after the

---

[1] The Department cites to its "Undisputed Material Facts" henceforth as "UMFs."

arbitrator ordered that her discharge be reduced to a suspension that the Department reinstated her. (UMF #16).

**B.    PLAINTIFF HAS NOT SUBMITTED EVIDENCE DEMONSTRATING THAT THE DEPARTMENT'S DECISION WAS PRETEXTUAL.**

Even if Plaintiff were to have demonstrated that he was meeting the Department's legitimate expectations and that he was treated more harshly than similarly situated nonMexican-American employees, he could not prevail in this case because he has not presented evidence suggesting that the Department's stated reason for discharging him was pretextual. Plaintiff has not claimed that he was discharged for any reason other than that he was found to have engaged in the trading and trafficking of contraband. He has not argued that this was not the true reason for his discharge, choosing to argue instead that the Department should not have discharged him based on the testimony of three state inmates. In short, Plaintiff does not dispute the veracity of the Department's stated reason for discharging him but, rather, the veracity of the evidence upon which it based its decision to do so. Put another way, Plaintiff does not question the honesty of the Department's decision–simply its propriety–and he cannot prevail in this case as a result.

### V.    CONCLUSION

Plaintiff has failed to establish a prima facie case of race or national origin discrimination as he has not presented evidence demonstrating that he was meeting the Department's legitimate expectations or that he was similarly situated to nonMexican-American employees who were treated more favorably. Even if Plaintiff were to have done so, however, he has not submitted evidence suggesting that he was discharged for any reason other than that the Department honestly believed he had engaged in the trading

and trafficking of contraband with state prisoners. For these reasons, he cannot succeed in this case as a matter of law.

WHEREFORE, the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS, respectfully prays that this Honorable Court enter summary judgment in its favor and against Plaintiff.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CORRECTIONS,

Defendant,

LISA MADIGAN, Attorney General
of the State of Illinois,

Attorney for Defendant,

William E. Jarvis, #6207097
James F. Ehrenberg, Jr., #6274865
Assistant Attorneys General
500 South Second Street
Springfield, IL 62706
(217) 785-4555

By: /s/ William E. Jarvis
    WILLIAM E. JARVIS
    Assistant Attorney General

Of Counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2005, I electronically filed Defendant's Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Stephen T. Fieweger
Katz, Huntoon & Fieweger, P.C.
200 Plaza Office Building
P.O. Box 3250
Rock Island, IL 61204-3250
sfieweger@katzlawfirm.com

and I hereby certify that on June 17, 2005, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

None

Respectfully Submitted,
/s/ William E. Jarvis
William E. Jarvis
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
Phone: (217) 785-4555
Fax:   (217) 524-5091
E-Mail: wjarvis@atg.state.il.us
Attorney Bar #: 6207097