E-FILED
Friday, 17 June, 2005 04:25:33 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS       )
                        ) SS.
COUNTY OF PEORIA        )

Mark Jennings v. IDOC
USDC-CD-IL Case No. 03-4087

### AFFIDAVIT

I, ANITA EMRICH, being first duly sworn upon oath, state that I am over 18 years of age, I have personal knowledge of the facts set forth herein, and if called as a witness in this matter could competently testify to the following information:

1. I have worked for the Illinois Department of Corrections (IDOC) as an Investigator since 1995.

2. In my capacity as Investigator, I am called on to investigate allegations made against IDOC personnel.

3. On February 24, 2002, I was asked by East Moline Correctional Center Warden Gary Wyant to investigate the conduct of Correctional Officer Mark Jennings regarding allegations that he was trading and trafficking with inmates.

4. I conducted my investigation into the allegations by interviewing inmates Joseph J. Turner, Jose Davila, Steve J. Mantulla, Melvin L. Rogers, Brian Riggs, Christopher L. Krodel, John D. Peeples, and Tory J. Hopkins, and Correctional Officer Mark W. Jennings. (See attached report.)

5. From my investigation, I concluded that based on inmate and employee statements, supported by polygraph test results, the charges of conduct of individual socializing, trading, trafficking, aiding or abetting a resident, failure to report an offense or incident, and conflict of interest were substantiated against Mark Jennings.

6. A copy of my investigative report was sent to East Moline Correctional Center Warden Gary Wyant on July 22, 2002.

FURTHER AFFIANT SAYETH NOT.

_____
ANITA EMRICH

Subscribed and sworn to before me
this 14th day of June, 2005.

_____
Notary Public

OFFICIAL SEAL
LISA D. WEITEKAMP
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-14-2005

EXHIBIT
2

Illinois Department of Corrections
INTERNAL INVESTIGATIONS

## REPORT OF INVESTIGATION

| Case Number | Institution | Case Investigator |
|---|---|---|
| 02-EMO-153 | East Moline Correctional Center | EMRICH |

Time, Date and Nature of Incident

02/24/02; Conduct of Individual, Socializing, Trade, Traffick, Aid or Abett a Resident, Failure to Report an Offense or Incident, Conflict of Interest, Trading or Trafficking, Unauthorized Property

| | Name (Last, first, middle) | Complainant ☐ | Victim ☐ | Inmate ☐ |
|---|---|---|---|---|
| S U B J | JENNINGS, MARK W., (Correctional Officer) | Offender ☒ | Witness ☐ | Employee ☒ |
| | Institution Number | Institutional Nickname (s) | | |

REPORT STATUS:    Initial Open ☒    Final ☒

Interviewed:
1. TURNER, JOSEPH J., B-11090
2. WORKMAN, STEPHANIE L., Correctional Officer
3. DAVILA, JOSE (NMN), R-00947
4. MANTULLA, STEVE J., N-10463
5. ROGERS, MELVIN L., B-13292
6. RIGGS, BRIAN (NMN), B-12025
7. KRODEL, CHRISTOPHER L., B-35546
8. PEEPLES, JOHN D., N-82826
9. HOPKINS, TORY J., K-80996
10. DAVIS, DAVID (NMN), Inmate, K-69739
11. HAMILTON, GREGORY A., Inmate, K-72756
12. JENNINGS, MARK W., Correctional Officer

Case Summary:
This investigation was conducted at the request of Warden GARY WYANT, East Moline Correctional Center, when, on 02/24/02, Inmates JOHN TURNER, B-11090; JOSE DAVILA, R-00947; BRIAN RIGGS, B-12025; and STEVE MANTULLA, N-10463, admitted to trading and trafficking with Correctional Officer MARK JENNINGS (Attachment #1).

Correctional Officer DOUGLAS MATHIS reported by Incident Report that, on 02/24/02, an unnamed inmate pointed out Inmate "JOHN" TURNER, B-22090, and said that TURNER was selling Black & Mild cigars on the yard. According to MATHIS, twelve packs of Newport cigarettes were found on TURNER who claimed that he was selling them to buy gym shoes (Attachment #2).

Correctional Lieutenant DARRELL PEARSALL, Internal Affairs, provided copies of his interviews of Inmates TURNER, DAVILA, RIGGS, MANTULLA, MELVIN ROGERS, B-13292, JOHN PEEPLES, N-82826, and TORY HOPKINS, K-80996. These inmates all stated, substantially, the same information as in their interviews that follow (Attachments #3 through #11).

On 02/26/02, Inmates TURNER, B-11090; MANTULLA, N-10463; DAVILA, R-00947; RIGGS, B-12025; and KRODEL, B-35546, were transferred from East Moline Correctional Center to other facilities (Attachment #12).

Inmate JOSEPH "JOHN" TURNER, B-11090, stated that Inmate JOSE DAVILA, R-00947, moved into TURNER's cell (#30) in Dorm #6 in 08/01. TURNER noticed that DAVILA had Black & Mild cigars which weren't sold in the commissary. TURNER related that one day he (TURNER) bought ten cigars from DAVILA for

DC 346                 Page 1 of 9 page(s)                 000006
IL 426-0438

Continued

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

$18.00 in commissary and sold the remaining eight cigars for ten packs of cigarettes. TURNER stated that he figured that DAVILA got the cigars, about 20 boxes each week, from staff in dietary where DAVILA worked. TURNER stated that DAVILA also brought bags of sunflower seeds and chewing gum to their cell. TURNER stated that DAVILA stopped getting Black & Milds when the 90 day staff assignments changed in 10/01. TURNER stated that, while he was in Segregation from 10/20/01 to 10/31/01 for a different issue, Correctional Officer MARK JENNINGS gave him cigarettes. TURNER stated that, after he was out of Segregation, he learned that JENNINGS worked third shift in Dorm #2 where a friend, Inmate STEVE MANTULLA, lived. TURNER had MANTULLA take JENNINGS three packs of cigarettes that he owed JENNINGS. TURNER stated that MANTULLA reported back that JENNINGS didn't want the cigarettes, but asked if TURNER wanted "more cigars." TURNER then realized that DAVILA must have gotten the Black & Milds from JENNINGS. TURNER stated further that he was living in Dorm #12 at that time, so MANTULLA became the middle man, and came back with five boxes of Black & Mild cigars from JENNINGS. TURNER related that he and MANTULLA sold the five boxes and MANTULLA took 11 packs of cigarettes to JENNINGS. TURNER stated that, according to MANTULLA, JENNINGS said they were short; it was three packs of cigarettes for every box of cigars. TURNER stated that, for a few weeks, MANTULLA got two to five boxes of cigars from JENNINGS, they sold them to other inmates for cigarettes and commissary and paid JENNINGS in cigarettes. TURNER stated that he smoked free and MANTULLA got commissary. TURNER remembered that JENNINGS also brought MANTULLA shaving cream, red crushed pepper, cologne and a watch in exchange for cigarettes. TURNER stated that he then moved to Dorm #2 where JENNINGS worked two days a week, and by Christmas, 2001, JENNINGS was bringing cigars directly to him. TURNER stated that JENNINGS brought in five to ten boxes of Black & Milds at a time for 2 ½ packs of cigarettes per box. TURNER stated that JENNINGS unlocked the bathroom in the middle of Dorm #2 when he came in to do "count" and, between 12:00 a.m. and 1:30 a.m., TURNER went in the bathroom, picked up the cigars that JENNINGS had put in a desk drawer and TURNER left cigarettes (in the drawer). TURNER stated that this continued for a couple of weeks and then one day JENNINGS brought in ten boxes of cigars and said that he could use a pair of "Lugz" boots. TURNER related that he had Inmate DAVE DAVIS, K-69739, purchase size 10 boots from the commissary and he gave DAVIS 20 packs of cigarettes for the boots. TURNER stated that he put the boots in the desk drawer and told JENNINGS that they were there. TURNER stated that JENNINGS next wanted gym shoes so he traded Inmate "J-DOG" cigarettes for gym shoes that he put in the desk drawer for JENNINGS. TURNER stated that JENNINGS moved up to Dorms #3 & #4 and, with his female officer's (STEPHANIE WORKMAN's) knowledge, TURNER went up to see JENNINGS. TURNER stated that JENNINGS continued to bring him cigars and next JENNINGS wanted a beard trimmer and some "Skoal." TURNER stated that he purchased the items himself at the commissary and traded them with JENNINGS for more cigars. TURNER stated that JENNINGS then gave him a pack of sunflower seeds and said that he wanted a pair of "Al Iverson" gym shoes. TURNER related that, on 02/24/02, as he was on the way to trade 12 packs of cigarettes with Inmate "COBRA" for the gym shoes, he was stopped and taken to Internal Affairs. TURNER added that Inmate BRIAN RIGGS, B-12025, also sold Black & Milds that he got from JENNINGS in exchange for meat from dietary for JENNINGS' dogs. TURNER stated that JENNINGS bragged about his dogs getting cheeseburgers and steaks "on the state." TURNER stated that Black & Milds also came in through his cellmate, Inmate CHRIS KRODEL, B-35546. TURNER stated that he was with KRODEL when Corrections Supply Supervisor II JOHN KRUP handed KRODEL a manila envelope. TURNER stated that KRODEL pulled pornographic magazines and a box of Black & Milds out of the envelope. TURNER stated that he saw KRODEL give Inmate PEEPLES, N-82826, Black & Milds two or three times. TURNER added that he had seen Officer BEA give single cigars to Inmate "BIG G" and other inmates who helped him, but he couldn't recall when or where that happened (Attachment #13).

TURNER agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/05/02 (Attachment #14).

Records confirmed that TURNER lived in Dorm #6 from 03/19/01 to 10/22/01, in Segregation from 10/22/01 to 10/31/01, and in Dorm #12 from 10/31/01 to 11/09/01. TURNER lived in Unit #2 from 11/09/01 to 12/12/01 and

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

then in Dorm #2, Rooms #55 & #56 of the Administration Building from 12/12/01 to 02/24/02 (Attachment #15).

TURNER's property was searched on 02/26/02, and one bag of sunflower seeds and one typewritter ribbon were confiscated. The items will be maintained as evidence at East Moline Correctional Center (Attachment #16).

Polygraph Examiner MIKE MUSTO administered a polygraph examination to Inmate JOSEPH TURNER, B-11090, on 03/16/02. TURNER tested truthful when he answered yes to questions regarding Correctional Officer JENNINGS handing him boxes of Black & Milds and his paying JENNINGS for the Black & Milds (Attachment #17).

After 23 days in Segregation, TURNER was released to Parole on 03/19/02 (Attachment #18).

Correctional Officer MARK JENNINGS was assigned to Dorm #6 from 07/16/01 to 10/15/01, to Segregation and Dorms #1 & #5 from 10/16/01 to 01/15/02, and to Segregation and Dorms #3 & #4 from 01/16/02 to the present (Attachment #19).

A photo of JENNINGS was obtained (Attachment #20).

Correctional Officer STEPHANIE WORKMAN recognized Inmate JOSEPH TURNER, B-11090, by photo. WORKMAN remembered TURNER asking her, after the 11:00 p.m. "count," if he could go up and talk with JENNINGS. WORKMAN stated that she then called JENNINGS on Dorms #3 & #4 and told him that TURNER wanted to talk with him. WORKMAN recalled JENNINGS saying to send him up. WORKMAN recalled that happening two times and each time TURNER talked with JENNINGS just ten minutes. WORKMAN did not notice if TURNER had anything on him when he left or came back (Attachment #21).

Inmate JOSE DAVILA, R-00947, stated that, in 08/01, at his roommate's, TURNER's, suggestion he asked JENNINGS if it was possible to get Black & Mild cigars. DAVILA related that two weeks later, during third shift, JENNINGS called DAVILA to the control center and handed him two boxes of Black & Mild cigars. DAVILA smoked one cigar and it was too strong so he gave the remaining nine to TURNER. DAVILA stated that TURNER gave him four packs of cigarettes and DAVILA gave them to JENNINGS. DAVILA stated that, every two weeks in 08/01 and 09/01, JENNINGS gave him two or three boxes of cigars, DAVILA gave them to TURNER, who sold them for cigarettes, and DAVILA gave the cigarettes to JENNINGS. DAVILA stated that he got all of the cigarettes he needed plus a bag of sunflower seeds from JENNINGS during that period, but then it stopped in 10/01. DAVILA stated that there were no Black & Milds on the yard when he understood that JENNINGS was suspended, but they reappeared in 11/01 and were still around East Moline. DAVILA added that his involvement ended in 10/01 (Attachment #22).

DAVILA agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/11/02 (Attachment #23).

Records confirmed that DAVILA lived in Dorm #6 from 08/24/01 to 02/25/02 (Attachment #24).

DAVILA was issued a Disciplinary Report on 03/20/02, for Unauthorized Property and Trading and Trafficking. DAVILA received two months Demotion to "C" Grade and one month Segregation (Attachments #25 & #26).

DAVILA refused polygraph testing on 04/02/02 (Attachment #27).

Inmate STEVE MANTULLA, N-10463, stated that, in 08/01 or 09/01, TURNER told him that his cellmate, Inmate DAVILA, was coming back from work with 10 to 15 boxes of Black & Mild cigars. MANTULLA stated that TURNER learned that DAVILA was getting the cigars from JENNINGS so TURNER cut DAVILA out and got the

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

cigars from JENNINGS himself. MANTULLA stated that TURNER gave him a couple of cigars that MANTULLA then sold for cigarettes. MANTULLA stated that TURNER went to Segregation and later told MANTULLA that JENNINGS gave him cigarettes while TURNER was in Segregation. MANTULLA related that JENNINGS was working in MANTULLA's dorm (#2) and TURNER was living in Building #2. MANTULLA stated that TURNER asked MANTULLA to tell JENNINGS that he had the five packs of cigarettes that TURNER owed JENNINGS. MANTULLA stated that JENNINGS said to tell TURNER to forget it. MANTULLA stated that around Thanksgiving 2001, JENNINGS woke him and motioned him to the control center. MANTULLA stated that JENNINGS showed him a desk drawer with five boxes of Black & Mild cigars in it. MANTULLA took the cigars to TURNER and TURNER gave MANTULLA ten packs of cigarettes to give to JENNINGS. MANTULLA stated that JENNINGS said, "He's short" referring to the ten packs of cigarettes. MANTULLA stated that JENNINGS and TURNER worked it out and MANTULLA passed cigars and cigarettes between TURNER and JENNINGS for five more weeks. MANTULLA stated that, each week, JENNINGS brought in five to ten boxes of cigars and took out 25 packs of cigarettes. MANTULLA stated that he got three or four of every ten boxes of cigars and he sold them for cigarettes. MANTULLA stated that, per his request, JENNINGS handed him shaving cream, spices, a watch, and super glue for TURNER, while they were in the control center of Dorm #2. MANTULLA stated that TURNER repaired his TV with the super glue. MANTULLA paid JENNINGS with ten packs of cigarettes that he didn't need for himself. MANTULLA stated that he stopped passing cigars and cigarettes when TURNER moved into Dorm #2 where MANTULLA lived and where JENNINGS worked two nights a week. MANTULLA stated that TURNER moved into MANTULLA's room in mid 01/02 and MANTULLA heard JENNINGS tell TURNER he had too many cigarettes and later TURNER said JENNINGS wanted shoes. MANTULLA related that an inmate, possibly DAVIS, went into the commissary where MANTULLA worked and bought a pair of boots. MANTULLA later saw TURNER leave their room in the middle of the night with the boots and return without them. MANTULLA understood that TURNER got 14 boxes of cigars for the boots. MANTULLA stated that TURNER continued to give him boxes of cigars for cigarettes and commissary. MANTULLA stated that TURNER had a pair of Reebok Ridge gym shoes and said he was giving them to JENNINGS. MANTULLA stated that TURNER bought a razor at the commissary, and then told MANTULLA that he gave JENNINGS his cleaned up old razor. MANTULLA stated that, on 02/16/02, TURNER said that JENNINGS wanted "Lugz" gym shoes, but since he (TURNER) got out in a month, he was going to pick up the usual ten boxes of cigars and hold off on paying JENNINGS the shoes. MANTULLA stated that on 02/24/02, TURNER gave MANTULLA two boxes of cigars while they were in their room and TURNER left. MANTULLA put one box in his shirt pocket and exited the room. MANTULLA stated that, as he met up with TURNER in the hall, Officer MATHIS called TURNER to him. MANTULLA returned to their room where he told Inmate ROGERS, B-13292, to hold the box of cigars from his pocket and a second box from his property. MANTULLA stated that, later, he saw ROGERS taken out in cuffs, and then he (MANTULLA) was questioned. MANTULLA stated further that another roommate, Inmate CHRIS KRODEL, B-35546, showed him two new pornographic magazines in early 02/02 and said (C.S.S. II) JOHN KRUP gave them to him. MANTULLA stated that he also saw KRODEL give another roommate, Inmate JOHN PEEPLES, N-82826, ten boxes of Black & Milds, but he didn't know where KRODEL got the cigars (Attachment #28).

MANTULLA agreed to submit to a polygraph examination and signed a Polygraph Consent Form on 03/12/02 (Attachment #29).

Records indicated that MANTULLA lived in Unit #1, Dorm #11 from 06/27/01 to 11/14/01 and in the Administrative Building, Dorm #2, Room #55 from 11/14/01 to 02/24/02 (Attachment #30).

One black wristwatch was confiscated from MANTULLA on 02/24/02. MANTULLA's property was searched on 02/25/02 and containers of spices, bottles of cologne and a can of shaving cream were confiscated. These items will be maintained as evidence at East Moline Correctional Center (Attachments #31 & #32).

MANTULLA was issued a Disciplinary Report on 03/20/02, for Unauthorized Property and Trading and

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

Trafficking. MANTULLA received 38 days Segregation (Attachments #33 & #34).

MANTULLA refused polygraph testing on 05/07/02 (Attachment #35).

Inmate MELVIN ROGERS, B-13292, stated that, when MANTULLA moved into his room (#55) in Dorm #2, he noticed that MANTULLA had a lot of commissary and cigarettes. ROGERS related that MANTULLA sold the cigarettes to other inmates for $2.50 per pack when they cost $3.47 per pack in the commissary. ROGERS stated that, when TURNER moved into their cell, ROGERS observed TURNER showing MANTULLA boxes of Black & Mild cigars. ROGERS heard TURNER and MANTULLA say they got them from an officer, but they didn't say a name. ROGERS stated that TURNER and MANTULLA had at least ten boxes of cigars each week that they sold on the "Pavilion" for cigarettes and cosmetics. ROGERS stated that, on 02/23/02, Inmate RIGGS told him that RIGGS "took" some Black & Milds from TURNER and now the unnamed officer was giving cigars to RIGGS. ROGERS stated that, on the morning of 02/24/02, MANTULLA came in their room, handed him two boxes of Black & Milds and said to hold them until the afternoon. ROGERS stated that MANTULLA left, ROGERS put the cigars in his (ROGERS) property box and went to lunch. ROGERS stated that his room was searched and he was locked up for having the cigars. ROGERS related that, while in Segregation, Officer JENNINGS asked him why he was there, RIGGS said for some Black & Milds and JENNINGS said he hoped that he (ROGERS) wasn't going to say it was his (JENNINGS) fault. ROGERS maintained that he didn't smoke Black & Milds and he never bought or sold any (Attachment #36).

ROGERS agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/13/02 (Attachment #37).

On 02/24/02, two packs of Black & Mild cigars were confiscated from ROGERS (Attachment #38).

ROGERS lived in Dorm #2, Room #55 in the Administration Building from 10/03/01 to 02/24/02 (Attachment #39).

ROGERS was issued a Disciplinary Report for Unauthorized Property on 02/24/02. ROGERS received 2 months Demotion to "C" Grade, 45 days Segregation and Transfer (Attachments #40 & #41).

Inmate BRIAN RIGGS, B-12025, stated that JENNINGS gave him one to two boxes of Black & Mild cigars each week, starting a couple of months ago. RIGGS stated that he worked in dietary and he sent extra food to JENNINGS on the inmate carts. RIGGS stated that he sold the cigars for cigarettes for himself. RIGGS added that TURNER ran his mouth about TURNER getting cigars from JENNINGS. RIGGS declined polygraph testing (Attachment #42).

Records indicated that RIGGS lived in Dorm #3, Room #22 of the Administration Building from 01/09/02 to 02/25/02. RIGGS had worked in dietary since 11/18/01 (Attachments #43 & #44).

RIGGS was issued a Disciplinary Report on 03/20/02, for Trading and Trafficking and he received 1 month Demotion to "C" Grade, 28 days Segregation and 1 month Loss of Commissary (Attachments #45 & #46).

Inmate CHRISTOPHER KRODEL, B-35546, stated that he knew that TURNER and RIGGS were selling Black & Mild cigars, that they supposedly got from JENNINGS. KRODEL indicated that he had nothing to do with the Black & Milds. KRODEL stated further that, on 02/24/02, illegal pornography was found in his property. KRODEL stated that friends had sent him the magazines and he kept them because they were valuable to trade. KRODEL related that he had loaned his pornographic magazines to inmates and staff, always in a brown envelope. KRODEL admitted that he had taken the magazines to his job in General Stores and KRUP had looked at them. KRODEL thought that KRUP could have handed KRODEL's own magazines back to him.

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

KRODEL stated that no staff gave him Black & Milds with or without pornographic magazines. KRODEL didn't recall ever being with TURNER in General Stores. KRODEL did remember TURNER asking him how to get his inmate number off of a beard trimmer he purchased for someone else. KRODEL stated that TURNER once said that he had to get a pair of shoes for someone who owed him ten boxes of Black & Milds (Attachment #47).

KRODEL agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/11/02 (Attachment #48).

KRODEL's property was searched on 02/24/02, and 18 pornographic magazines and seven pornographic books were confiscated. These items will be maintained as evidence at East Moline Correctional Center (Attachment #49).

KRODEL lived in Dorm #2, Room #63 of the Administration Building from 09/28/01 to 02/24/02 (Attachment #50).

KRODEL was issued a Disciplinary Report on 03/20/02, for Contraband/Unauthorized Property and for Trading and Trafficking. KRODEL received 1 month Demotion to "C" Grade, 29 days Segregation and 1 month Loss of Commissary (Attachments #51 & #52).

Inmate JOHN PEEPLES, N-82826, stated that his cellmate, TURNER, always had Black & Mild cigars that he didn't smoke, so PEEPLES assumed that TURNER sold them. PEEPLES stated that TURNER was "tight" with another cellmate named MANTULLA and MANTULLA also had Black & Milds. PEEPLES stated further that eight pornographic magazines were found in PEEPLES' property on 02/24/02. PEEPLES stated that he got the 2002 "Hustler" from Inmate BOSKI, who had since gone home. PEEPLES stated that his magazines dated back to 1998 and he got them on visits and from other inmates. PEEPLES stated that he shared pornographic magazines with KRODEL who never said where he got his. PEEPLES stated that he never saw KRODEL with Black & Milds and he (PEEPLES) hadn't messed with them since he quit smoking on 04/30/01 (Attachment #53).

PEEPLES agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/13/02 (Attachment #54).

PEEPLES lived in Dorm #2, Room #55 of the Administration Building from 01/16/02 to 02/24/02 (Attachment #55).

PEEPLES was issued a Disciplinary Report on 03/15/02, for Trading and Trafficking and Unauthorized Property. PEEPLES received 2 months Demotion to "C" Grade, 45 days Segregation, and Transfer (Attachments #56 & #57).

Inmate TORY HOPKINS, K-80996, stated that, shortly after 01/01/02, TURNER asked HOPKINS to purchase a pair of size 12 "Lugz" boots for him in return for a carton of cigarettes and four to five boxes of Black & Milds. HOPKINS stated that he purchased the boots and met TURNER on the yard, just outside the commissary. HOPKINS stated that he put the boots in TURNER's shopping bag and TURNER gave him the cigarettes and cigars. HOPKINS stated that he smoked all of the cigars himself (Attachment #58).

HOPKINS agreed to submit to a polygraph and signed a Polygraph Consent Form on 03/13/02 (Attachment #59).

Records indicate that HOPKINS purchased a pair of "Lugz" boots on 01/23/02 (Attachment #60).

Continued

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

HOPKINS was issued a Disciplinary Report on 03/15/02, for Trading and Trafficking. HOPKINS received 2 months Demotion to "C" Grade, 1 month Segregation and Transfer (Attachments #61 & #62).

Inmate DAVID DAVIS, K-69739, stated that, after Christmas, he purchased a pair of "Lugz" boots at the commissary and exchanged them with TURNER on the yard for 20 packs of cigarettes. DAVIS stated that he also purchased five packs of cigarettes from TURNER for $2.50 worth of commissary per pack (Attachment #63).

Records indicate that DAVIS purchased a pair of "Lugz" boots on 01/04/02 (Attachment #64).

DAVIS was issued a Disciplinary Report on 03/15/02, for Trading and Trafficking. DAVIS received 2 months Demotion to "C" Grade, 1 month Segregation, and Transfer (Attachments #65 & #66).

Inmate GREGORY HAMILTON, K72756, denied ever getting or selling Black & Mild cigars (Attachment #67).

Correctional Officer MARK JENNINGS denied bringing Black & Mild cigars and food items into East Moline Correctional Center and giving them to any inmate. JENNINGS denied receiving boots, shoes and/or a beard trimmer from any inmate (Attachment #68).

According to John Middleton, Inc., the makers of Black & Mild cigars, a particular box of cigars could have been sold in any store, anywhere. The UPC number on the box simply identified the product. John Middleton, Inc., was located in King of Prussia, PA 19406, telephone number 610-265-1400.

Conclusion:
Based on inmate and employee statements, supported by polygraph test results, the charges of Conduct of Individual, Socializing, Trade, Traffick, Aid or Abett a Resident, Failure to Report an Offense or Incident and Conflict of Interest are substantiated against Correctional Officer MARK JENNINGS.

Based on their own admissions and direct evidence, Inmates JOSEPH TURNER, B-11090; STEVE MANTULLA, N-10463; and CHRISTOPHER KRODEL, B-35546, violated the Institutional Rules regarding Trading or Trafficking and Unauthorized Property. TURNER was paroled on 03/19/02, after 23 days in Segregation. MANTULLA and KRODEL have received discipline.

Based on their own admissions, Inmates JOSE DAVILA, R-00947; BRIAN RIGGS, B-12025; TORY HOPKINS, K-80996; and DAVID DAVIS, K-69739, violated the Institutional Rule regarding Trading or Trafficking and all have received discipline.

Based on their own admission and direct evidence, Inmates MELVIN ROGERS, B-13292, and JOHN PEEPLES, N-82826, violated the Institutional Rule regarding Unauthorized Property and both have received discipline.

Attachments:

1. Outlook Message, WYANT, 02/26/02
2. Incident Report, MATHIS, 02/24/02
3. Interview, TURNER, 02/24/02
4. Re-Interview, TURNER, 02/24/02
5. Interview, DAVILA, 02/25/02
6. Interview, MANTULLA, N-10463
7. Interview, RIGGS, B-12025
8. Interview, KRODEL, 02/25/02

110r012

DC 346
IL 426-0438

Page 7 of 9 page(s)

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

9. Interview, ROGERS, 02/24/02
10. Interview, PEEPLES, 02/25/02
11. Interview, HOPKINS, 02/26/02
12. Outlook Message, WYANT, 02/26/02
13. Re-Interview, TURNER, 03/05/02
14. Polygraph Consent Form, TURNER, 03/05/02
15. Inmate Occupancy History, TURNER
16. Shakedown Record, TURNER, 02/26/02
17. Polygraph Test Report, TURNER, 03/16/02
18. Inmate Movement History, TURNER
19. Assignment Roster, JENNINGS
20. Photo, JENNINGS
21. Interview, WORKMAN, 05/06/07
22. Re-Interview, DAVILA, 03/11/02
23. Polygraph Consent Form, DAVILA, 03/11/02
24. Inmate Occupancy History, DAVILA
25. Disciplinary Report, DAVILA, 03/20/02
26. Adjustment Committee Summary, DAVILA, 03/28/02
27. Polygraph Examination Report, DAVILA, 04/02/02
28. Re-Interview, MANTULLA, 03/12/02
29. Polygraph Consent Form, MANTULLA, 03/12/02
30. Inmate Occupancy History, MANTULLA
31. Shakedown Record, MANTULLA, 02/24/02
32. Shakedown Record, MANTULLA, 02/25/02
33. Disciplinary Report, MANTULLA, 03/20/02
34. Adjustment Committee Summary, MANTULLA,
35. Polygraph Examination Report, MANTULLA, 05/07/02
36. Re-Interview, ROGERS, 03/13/02
37. Polygraph Consent Form, ROGERS, 03/13/02
38. Shakedown Record, ROGERS, 02/24/02
39. Inmate Occupancy History, ROGERS
40. Disciplinary Report, ROGERS, 02/24/02
41. Adjustment Committee Summary, ROGERS, 03/12/02
42. Re-Interview, RIGGS, 03/11/02
43. Inmate Occupancy History, RIGGS
44. Program/Assignment History, RIGGS
45. Disciplinary Report, RIGGS, 03/20/02
46. Adjustment Committee Summary, RIGGS, 03/24/02
47. Re-Interview, KRODEL, 03/11/02
48. Polygraph Consent Form, KRODEL, 03/12/02
49. Shakedown Record, KRODEL, 02/24/02
50. Inmate Occupancy History, KRODEL
51. Disciplinary Report, KRODEL, 03/20/02
52. Adjustment Committee Summary, KRODEL, 03/24/02
53. Re-Interview, PEEPLES, 03/13/02
54. Polygraph Consent Form, PEEPLES, 03/13/02
55. Inmate Occupancy History, PEEPLES
56. Disciplinary Report, PEEPLES, 03/15/02
57. Adjustment Committee Summary, PEEPLES, 03/19/02
58. Re-Interview, HOPKINS, 03/13/02

Continued

| Case Number | Subject's Name (Last, first, middle) | Institution Number | Institution |
|---|---|---|---|
| 02-EMO-153 | JENNINGS, MARK W., (C.O.) | | East Moline C.C. |

59. Polygraph Consent Form, HOPKINS, 03/13/02
60. Commissary Order, HOPKINS, 01/23/02
61. Disciplinary Report, HOPKINS, 03/15/02
62. Adjustment Committee Summary, HOPKINS, 03/19/02
63. Interview, DAVIS, 02/26/02
64. Commissary Order, DAVIS, 01/04/02
65. Disciplinary Report, DAVIS, 03/15/02
66. Adjustment Committee Summary, DAVIS, 03/19/02
67. Interview, HAMILTON, 02/25/02
68. Interview, JENNINGS, 03/13/02
AE

Reviewed By:

000014

DC 346
IL 426-0438

Page 9 of 9 page(s)

**TADLOCK, ALAN**

**From:** WYANT, GARY
**Sent:** Tuesday, February 26, 2002 8:22 AM
**To:** MONTGOMERY, JESSE; PAGE, THOMAS; TADLOCK, ALAN
**Subject:** FW: Turner B11090

This investigation remains centered around Officer Jennings and his actions, trading and trafficking with inmates Turner B11090, Mantulla N10463, Riggs B12025 and Davila R00947. Attached please find a worksheet. A brief synopsis is as follows:

- Inmates Turner, Riggs, Mantulla and Davila all admit to trading and trafficking with Officer Jennings.
- The primary item traded and trafficked has been Black and Mild cigars, however inmate statements indicate that Spices, Sunflower Seeds, Chewing Gum, and a Wrist Watch has been brought into the facility by Officer Jennings and given to inmates in exchange for shoes (tennis shoes and work boots), a Panasonic razor, cigarettes and extra food for Officer Jennings.
- We are in possession of Sunflower Seeds (brand not available at East Moline Commissary), a wrist watch (brand not available and not processed through personal property), spices (not available through commissary) and cologne (again not available).
- In review of personal property records and trust fund accounts we have verified the statements of purchasing shoes and Panasonic razor.
- A second part of this investigation indicates that Supply Supervisor John Krup may have traded and trafficked with inmate Peeples N82826 and Krodel B35546. Inmate Turner alleges that he observed Krup hand inmate Krodel an envelope with two pono magazines in it dated 2002 and 5 packs of Black and Mild cigars.
- Additionally inmate Turner alleges that he has observed Officer Bea give inmate Hamilton K72756 Black and Mild cigars for doing work on Dorm 12.
- Inmates Rogers B13292, Mantulla N10463, Turner B11090, Riggs B12025, Peeples N82826, Krodel B35546, Hamilton K72756 and Davila R00947 have been dropped (all negative), interviewed and placed in Segregation. Internal Affairs has gone through their property closely and reviewed and trust fund accounts and personal property sheets.
- No Staff interviews have been conducted at this time.
- Inmate Turner's MSR date is 3/19/02. Inmate Mantulla N10463 alleges that he has assisted Internal Affairs at Graham C.C., ATF and Ill. State Police in Investigations and we have found he does have several KSF's.

I am awaiting the assignment of an Investigator and not proceeding with Interviews of Staff at this time. I am interested in moving inmates Turner B11090, Mantulla N10463, Riggs B12025, Davila R00947, and Krodel B35546. Inmates Turner B11090, Mantulla N10463 and possibly Davila R00947 may need polygraph. I feel it would be in our best interest to move these inmates so as not to compromise the investigation by the involved inmates talking to staff about the investigation.

Gary L Wyant
Warden
East Moline C.C.

000015

02/26/2002          P  1  OF  1          ATTACHMENT  1

STATE OF ILLINOIS – DEPARTMENT OF CORRECTIONS

Incident Number: _____
Type of Incident: _____

## ADULT AND JUVENILE DIVISIONS
## INCIDENT REPORT

If the answer is yes to any of the following questions, explain in narrative below:

Institution/Program: Emcc Security    Date and Time of Incident: 2/24/10 12:00 AM

A. Was a Weapon Involved: YES ☐ NO ☒
B. Were Restraint / Force Used: YES ☐ NO ☒
C. Was Property Damaged: YES ☐ NO ☒
D. Appr. Unit and/or Law Enf. Agency Notified: YES ☐ NO ☒
E. Were Arrests Made: YES ☐ NO ☒
F. Any Injuries / Hospitalizations: YES ☐ NO ☒
G. Were there Media Inquiries: YES ☐ NO ☒

**Inmates / Staff Involved:**

| Name | I.D. # | Offense | Commitment Date |
|---|---|---|---|
| Turner | B11090 | | |

**Witnesses to Incident:**

| Name | I.D. # | Name | I.D. # | Name | I.D. # |
|---|---|---|---|---|---|
| Co R Jackson | 7780 | | | | |

**Statement of Facts: (NARRATIVE)**

On the above date and time this RO was told by inmate (who I can not identify) that another inmate was selling Black and Milds Cigars on the yard. Unknown inmate and this RO walked passed Dorm 2, at which time unkonw Inmate pointed out inmate Turner B22090. CO Jackson and this RO did a shakedown on imate Turner and found 12 packs of Newports. When asked about the Newports inmate Turner stated "Other inmates owed them to me". Inmate Turner later stated "I was selling them to by some gym shoes before I go home".(There is unlimited space.)

Co Mathis  7809    2/24/02 1:30 AM
Reporting Employee    Date / Time    Person Calling in Report    Person Accepting Report    Date / Time

**Administrative Assessment:** _____

Chief Administrative Officer: _____    Date / Time: _____

Distribution: Director
Deputy Director of Adult Division
File

Deputy Director of Appropriate Division
Legal Services (only if restraints / force used)

000016

DC 434 (2/99) PC generated

P / OF /

ATTACHMENT 2

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

Case Number: 02-EMO-153
Investigator: EMRICH 15009
Last Name / Badge #

Type or Print all applicable information

Date of Incident: 2/24/02   Location of Incident: E. MOLINE CC

**Nature of Investigation:**
☒ Contraband  ☐ Death/Suicide  ☐ Drugs/Alcohol  ☐ Excessive Force  ☐ Intimidation/Threats  ☐ Misconduct
☐ Sexual Misconduct  ☐ Other (specify): TRADING + TRAFFICKING, CONDUCT OF IND. SOCIALIZING FAILURE TO REPORT OFFENSE OR INCIDENT

Subject of Investigation: C/O JENNINGS    MARK    W
Last Name / First Name / MI / ID or Badge #

**Interviewee:**
Type: ☐ Civilian  ☐ Employee  ☒ Inmate (Incarcerated)  ☐ Inmate (Electronic Detention)  ☐ Parolee

Name: Turner    Joseph        B11090
Last / First / MI / ID/Badge #

Race: ☒ White  ☐ African American  ☐ Asian  ☐ Native American  ☐ Hispanic  ☐ Other:
Gender: ☒ Male  ☐ Female   Age: 32   DOB: 12/02/1969   Weight: 300   Height: 6'03"

**If Interviewee is a Civilian, Employee, or Parolee:**
Employed at: _____ as _____ for _/_ Years Months
Regular days off (circle): M T W Th F Sat Sun   Office Phone #: (   )   Cell Phone #: (   )

**If Interviewee is an Inmate or Parolee:**
Facility: East Moline Correctional Center   Housing Assignment: U2-S-09
Sentenced to 10 / __ on 06/10/1998   from Cook County
for the offense(s) of: Aggravated Arson
Claims affiliation with: none   as John
STG / Nickname(s)
If on Parole or Electronic Detention, released from: _____ on _____
and is supervised by _____

**Interview was conducted:**
by D.M. Persall LT
at Internal Affairs   on 2/24/2002   at 7:45  ☒ a.m. ☐ p.m.
Constitutional Rights were: read: ☒ No  ☐ Yes at _____ ☐ a.m. ☐ p.m.
See Interviewee's statement on the next page.

Interview was concluded at: 11:55  ☒ a.m. ☐ p.m.

Signature of Interviewee / Signature of Interviewer
Name of Witness if any / Signature of Witness if any

Page 1 of 2   00017   Attachment: 3
Distribution: File

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

Investigational Interview
*(con't)*

| Interviewee: | JOSEPH TURNER | Case Number: | 02-EMO-153 |

The Interviewee substantially stated:

On 2/24/2002 at approximately 10:05 Turner went to the yard and approached inmate "Cobra" (name not known) about buying Alan Iverson tennis shoes size 12 1/2 in order to go home with a good pair of tennis shoes. Turner stated that he (Turner) is aware of people who have Black and Milds and where they get them, but Turner was not selling any Black and Milds and has not. Turner stated that approximately 1 month ago Turner was down in the General Store applying for a job with General Store worker John Krup. John Krup stated that Krup was going to keep his last worker so Turner and Krup and Krodel were sitting by the offices and talking, and Krup told Krodel that he (Krup) had the information for him and went and got a yellowish gold envelope and gave it to Krodell. On the way up the hill, Krodell opened the envelope and showed Turner 5 packs of Black and Milds and 2 magazines he thinks (Gallery and Cherry) (not sure) but knows they are new to 2002 Feb or March. Turner knows another time while Turner was on dorm 12 that Officer Bea gave Hamilton K72756 3 or 4 Black and Milds for cleaning up the dorm. Turner stated that Hamilton had stated that he (Hamilton) had 20 packs of Black and Milds coming and asked Turner if Turner would help Hamilton sell the Black and Milds. Turner stated that Hamilton would have to talk to him when he (Hamilton) got them. Turner also stated that inmate Peeples, John N82826 and Krodell hang out all the time and that Peeples sells the Black and Milds for Krodell. Turner stated that he (Turner) would submitt to a polygraph test.

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment 3 |

Distribution: File    Page 2 of 2

000019

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

Case Number: 02-EMO-153
Investigator: EMRICH  15009
            Last Name    Badge #

Type or Print all applicable information

Date of Incident: 2/24/02   Location of Incident: E. MOLINE CC

**Nature of Investigation:**
- ☒ Contraband
- ☐ Death/Suicide
- ☐ Drugs/Alcohol
- ☐ Excessive Force
- ☐ Intimidation/Threats
- ☐ Misconduct
- ☐ Sexual Misconduct
- ☐ Other (specify): TRADING + TRAFFICKING, CONDUCT OF IDOD, SOCIALIZING, FAILURE TO REPORT AN OFFENSE OR INCIDENT

Subject of Investigation: C/O  JENNINGS     MARK    W.
                              Last Name       First Name   MI   ID or Badge #

**Interviewee:**
Type: ☐ Civilian  ☐ Employee  ☒ Inmate (Incarcerated)  ☐ Inmate (Electronic Detention)  ☐ Parolee

Name: Turner    Joseph        B11090
      Last      First    MI   ID/Badge #

Race: ☒ White  ☐ African American  ☐ Asian  ☐ Native American  ☐ Hispanic  ☐ Other: ___
Gender: ☒ Male  ☐ Female  Age: 32  DOB: 12/02/1969  Weight: 300  Height: 6'03"

**If Interviewee is a Civilian, Employee, or Parolee:**
Employed at: _____ as _____ for _/_ Years Months
Regular days off (circle): M T W Th F Sat Sun   Office Phone #: (   )    Cell Phone #: (   )

**If Interviewee is an Inmate or Parolee:**
Facility: East Moline Correctional Center    Housing Assignment: AD-02-55
Sentenced to 10 / __ on 06/10/1998   from Cook
              Years Months    Date              County
for the offense(s) of: Aggravated Arson
Claims affiliation with: none _____ as John
                         STG              Nickname(s)
If on Parole or Electronic Detention, released from: _____ on _____
                                                   Facility        Date
and is supervised by _____
                    Agent or District Office

**Interview was conducted:**
by D.M. Persall LT
   Name and Title
at Internal Affairs    on 2/24/2002  at 4:20  ☐ a.m. ☒ p.m.
   Location              Date            Time

Constitutional Rights were: read: ☒ No  ☐ Yes at _____ ☐ a.m. ☐ p.m.
See Interviewee's statement on the next page.

Interview was concluded at: 17:20  ☐ a.m. ☒ p.m.

_____          _____
Signature of Interviewee       Signature of Interviewer

_____          _____
Name of Witness if any         Signature of Witness if any

Attachment: 4

Distribution: File    Page 1 of 3    000019    DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

Investigational Interview
*(con't)*

| Interviewee: JOSEPH TURNER | Case Number: 02-EMO-153 |

**The interviewee substantially stated:**

That around the middle of August 2001 Turner was assigned to Dorm 6 room 130 with inmates Rayford, Victor N64638, and Davila, Jose R00947. Turner noticed some Black and Mild Cigars in Davila's property box. Turner asked Davila if Davila knew what he (Davila) had that the Black and Milds were worth money at this institution that they were worth about one pack of Newport or name brand cigarettes for each cigar (comes in 5 pack). Davila then stated that he would check with his guys about it. Davila then got rid of the Black and Milds (selling them for cigarettes) and made the comment to Turner he (Davila) could not believe that and that Davila was going to see if he (Davila) could get some more of the Black and Milds. Davila then started getting a lot them in and that Turner was getting some for himself and selling them. Turner would give Davila commissary for 10 cigars. Turner stated that Davila was getting the Black and Milds Cigars in packs of 25-50 in a box and that is when Turner knew that Davila was not getting the cigars from inmates. This went on until the 90 day Roster rotation switched and then it ended. Shortly thereafter Turner went to segregation and officer Mark Jennings was working 11-7 shift in segregation. Turner explained to Jennings why he (Turner) was in segregation and Jennings asked Turner if everything was alright and Turner stated the he (Turner) could use some cigarettes and so Jennings gave Turner 4 or 5 cigaretts and then the next night that Jennings worked, Jennings brought in a couple of packs of Kools and gave them to Turner. Turner was then let out of segregation before Jennings came back again so Turner gave a couple of packs of cigaretts to inmate Mantulla, Steve N10463 to give to Jennings to pay him back for the cigarettes given in segregation. Mantulla then came back to Turner and gave the cigarettes back to Turner and advised Turner that Jennings did not want them but that Jennings had asked if Mantula knew anything about cigars and Mantulla stated that he (Mantulla) knew that Turner had some. Jennings then asked Mantulla if Mantulla thought that Turner would want 5 packs of Black and Milds and Mantulla told Jennings that he (Mantulla) thought so. Mantulla then told Turner that Jennings had given Mantulla 5 boxes of Black and Milds for Turner. It was then that Turner put 2 and 2 together and relaized that Jennings was the one supplying inmate Davila with the Black and Milds and also why Jennings was being so nice to Turner while Turner was in segregation. Turner then told Mantulla to keep 2 boxes for himself and Turner would take 3 boxes. Turner and Mantulla put together approximately 8 packs of mostly Newport cigarettes and Mantulla gave the packs to Jennings. Turner stated that Jennings was not happy with price and that Jennings expressed to Mantulla that they (Mantulla and Turner) were short cigarettes. Turner stated he (Turner) was paying what Davila told Turner that he (Davila) was paying which amounted to approximately $1.00 a piece (each cigar) in cigarettes. Jennings forgave Mantulla and Turner the rest of the debt stating that is was a mis-understanding but that the future price was 3 packs of cigarettes for 1 pack of Black and Milds which was approximately $10.50 per box of Black and Milds. From then on it was a weekly process it may be two boxes one week and five boxes the next all transacitons taking place through Mantulla up until the time that Turner got moved to dorm 2. After Turner got moved to Dorm 2 Turner negotiated the price of the Black and Milds down to 2 1/2 packs of cigarettes per 1 box of Black and Milds which led to 10 boxes of Black and Milds coming in so that the number of cigarettes paid would be even (25 packs of cigarettes for 10 boxes of Black and Milds). Turner would in turn split with Mantulla and both would sell them for commissary or for cigarettes. Turner stated that the going price for 1 pack of Black and Milds was 5 packs of cigarettes ( 1 pack of cigarettes for each cigar). Turner stated that Mantulla did not get money in from the streets and that is one of the reasons that Mantulla started selling them. Turner stated that once Turner moved to Dorm 2 that because there were so many people around the officers desk at night that he (Turner) would have to wait until approx. 1:30 am to 1:40 am to deal with Jennings. Turner stated that Mantulla and Turner shared that responsibility, that sometimes Mantulla would stay up late and other times Turner would stay up late however the majority of the times it was Turner. Turner stated that the first time that Turner was on Dorm 2 that Jennings asked Turner what Turner was doing on Dorm 2 and Turner told Jennings that he was moved to Dorm 2 and Jennings then told Turner to come see Jennings after count. Turner then thought Jennings wanted the cigarettes so Turner got packs together in a brown bag and tok them out to the officers station. Jennings then asked Turner what Turner was doing and advised Turner that from now on Jennings would leave the officers station/restroom on Dorm 2 open and Turner was to put the items in the drawer. Turner stated that around the end of December Jennings advised Turner that he couldn't use any more cigarettes and Turner asked what Jennings wanted and Jennings asked about the boots (Lugz). Turner then paid inmate Davis, David K69759 2 cartons of cigarettes to buy one pair of size 10 Lugz Boots. Turner and Davis made the transaction on the yard and Turner waited until Jennings worked again and then Turner put the boots inside the officer station under the desk. Turner later saw Jennings come out of the officer station with the Lugz boots on his (Jennings) feet and gym shoes in his(Jennings) hand. Turner stated that there were also a pair of Rebok Ridges size 11 or 11 1/2  that Turner gave inmate Brown, John B33394  5 or 6 boxes of Black and Milds for. Turner then put them in the officers station and Jennings got them and put them in his (Jennings) duffle bag. Turner stated that these tennis shoes were for his (Jennings) son because Jennings son has a bigger foot. Turner stated that Jennings now got reassigned due to the 90 day

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: 4 |

## Investigational Interview (con't)

**Interviewee:** JOSEPH TURNER    **Case Number:** 02-EMD-153

rotation. Jennings told Turner that they could still take care of business and told Turner to just leave for breakfast and go up the inmate elevator to Dorm 3 and 4. Turner stated for the first couple of weeks Turner did not do any business with Jennings. Then Turner went up to the female officer on Dorm 2 and asked if she minded if Turner went upstairs and spoke with officer Jennings and the officer (who Turner does not know by name) (Photo ID as officer Workman, Stephanie) stated that Turner would have to wait until count was over and then Workman would call Jennings and ask if Jennings wanted to talk to Turner. After count cleared Workman called Jennings and then would send Turner up. Sometimes Workman would tell Turner to wait 5 minutes and then would send Turner. Turner stated that Workman only did this 2 or 3 times. During these times transactions were taking place with the last being a Panasonic beard trimer (which Turner bought from commissary) and 5 Copenhagen Gold chewing tobacco which Turner bought 4 from commissary and inmate Mantulla gave Turner the 5th can). Turner stated that he (Turner) gave Mantulla commissary for the (can of Copenhagen). Turner stated that he (Turner) had also received sunflower seeds from Jennings since Turner was on Dorm 6, but Turner did not know Jennings is where they were coming from that Turner was receiving sunflower seeds from Davila as payment for selling Davila's Black and Milds. Jennings had told Turner that he (Jennings) was giving Davila sunflower seeds and Turner told Jennings that that was for Turner. Jennings would ten give Turner sunflower seeds and tell Turner that is was a bonus for Turner working for Jennings. Turner stated that Jennings recently told Turner that he couldn't get bulk sunflower seeds because they were out of season. Turner then told Jennings that Turner would pay for them in a package stating that Turner knew that they sold them at the convience store. Jennings then brought in a package of David Sunflower seeds. Turner stated that the David Sunflower seeds are currently unopened in Turners property box. Turner stated that Mantulla would get spices and red crushed pepper form Jennings as well as Aspen Colon and a black watch that was taken from Mantulla when he went to seg. The whole face of the watch is black and no numbers just dots for the time and gold around it. Mantulla gave Jennings 10 packs of cigarettes for the watch. Turner stated that Jennings (on one) brought back a whole bag of omletts from dietary wrapped in butcher paper made by third shift dietary workers Riggs, Brian B12025 (know to Turner as "Nicco") and when Riggs came back from working at dietary Jennings gave Riggs the bag of approximately 6 omletts. Turner stated that Riggs then went from door to door passing out or selling the omletts. Turner stated that he (Turner) also bought a pair of size 12 Lugz boots from inmate Hopkins, Tony K80996 for 5 boxes of Black and Milds within the last 2 months. Turner also stated that Riggs was also getting Black and Milds for what Turner thought was food from dietary for Jennings dogs for payment. Riggs had also stated to Turner that he (Riggs) knew that Turner was cool with the officer and told Turner not to dry up the well, then the next week Riggs told Turner that he (Turner) was hot and that Turner was going to get caught. Later Jennings told Turner that he (Jennings) had heard that Turner was hot Turner then told Jennings that he (Turner) knew that Riggs told Jennings that and Jennings acknowledged that Riggs did tell him (Turner) that. Turner stated that during the time that Turner and Jennings had a misunderstanding about the price of the Black and Milds that Turner typed a letter to Jennings and that it may still be on the Ribbon of Turner's typewriter and that it could be checked. Turner stated that inmate Dean, Lavel N51857 could verify that Turner was in the officers station talking to Jennings all the time and also inmate Mathey, Franklin K76923 could verify that Turner was up on Dorm 3 and 4 talking with Jennings. Turner stated that the Black and Milds found on inmate Rogers, Melvin B13292 were actually Mantulla's Black and Milds, and that Mantulla passed them off to "Buck" (Rogers). Turner also stated that when this first started back on Dorm 6 with Davila, Davila was getting in chewing gum and sunflower seeds. Turner also stated that he (Turner) knew that Jennings would not bring in pornorgraphic material, drugs, or vitamin (supplemnets). Turner stated that he (Turner) would submit to a polygraph.

**Attachment:** 4

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

Case Number: 02-EMO-153
Investigator: EMRICH 15009
Last Name / Badge #

Type or Print all applicable Information

Date of Incident: 2/24/02
Location of Incident: E. MOLINE C.C.

**Nature of Investigation:**
- [x] Contraband
- [ ] Death/Suicide
- [ ] Drugs/Alcohol
- [ ] Excessive Force
- [ ] Intimidation/Threats
- [ ] Misconduct
- [ ] Sexual Misconduct
- [ ] Other (specify): TRADING + TRAFFICKING, CONDUCT OF IND. SOCIALIZING, FAILURE TO REPORT OFFENSE OR INCIDENT

Subject of Investigation: C/O JENNINGS    MARK    W.
Last Name / First Name / MI / ID or Badge #

**Interviewee:**
Type:
- [ ] Civilian
- [ ] Employee
- [x] Inmate (Incarcerated)
- [ ] Inmate (Electronic Detention)
- [ ] Parolee

Name: Davila    Jose    A    R00945
Last / First / MI / ID/Badge #

Race:
- [ ] White
- [ ] African American
- [ ] Asian
- [ ] Native American
- [x] Hispanic
- [ ] Other:

Gender: [x] Male  [ ] Female   Age: 37   DOB: 11/18/1964   Weight: 269   Height: 511

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for _/_ Years Months
Business or Facility / Position or Title

Regular days off (circle): M T W Th F Sat Sun   Office Phone #: (   )   Cell Phone #: (   )

**If Interviewee is an Inmate or Parolee:**

Facility: East Moline Correctional Center   Housing Assignment: U1-D6-130

Sentenced to 6 / ___ on 02/04/2000   from Cook
Years Months Date / County

for the offense(s) of: Aggravated Battery of a Child

Claims affiliation with: none   as Pito
STG / Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
Facility / Date

and is supervised by _____
Agent or District Office

**Interview was conducted:**

by D.M. Pearsall, Lt.
Name and Title

at Internal Affairs   on 2/25/2002   at 220 [x] p.m.
Location / Date / Time

Constitutional Rights were read: [x] No   [ ] Yes at _____  [ ] a.m. [ ] p.m.

See Interviewee's statement on the next page.

Interview was concluded at: 310 [x] p.m.

_____ / _____
Signature of Interviewee / Signature of Interviewer

_____ / _____
Name of Witness if any / Signature of Witness if any

Distribution: File   Page 1 of 2   000022   Attachment: 5

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

Investigational Interview
*(con't)*

| Interviewee: | JOSE DAVILLA | Case Number: | 02-EMO-153 |

The Interviewee substantially stated:

That he got some Black and Mild cigars from an inmate that was on the new and had two packs of Black and Milds and Davila paid two packs of cigarettes for them. Davila stated that he (Davila) did not have any gum. Davila stated that he did have or did get a small package of sunflower seeds from an officer Jennings who worked 3rd shift but that was it. Davila stated that his cellie inmate Turner, Joseph B11090 was selling Black and Milds. Davila stated that he did sell one of the boxes of Black and Mild cigars to another inmate for kites (a large bag).

Davila stated that he did want to tell the truth but did not want to get anyone in trouble. Davila stated that he would tell the truth. That from August to September Jennings did bring in Black and Milds for Davila and chewing gum and sunflower seeds. Davila also observed Jennings give about 6 cans of chew to an inmate but Davila did not know who the inmate was. Davila believes that Jennings brought in about 5 boxes of Black and Milds and Turner was selling them for Davila. Davila stated that he (Davila) had to give Jennings 3 packs of Newports for each 5 pack of Black and Milds. Davila stated that when Jennings went on suspension than that's when it all stopped except that inmate Turner went to seg and when Jennings came back from suspension Jennings worked in segregation and Davila heard that since then Turner was getting Black and Milds from officer Jennings. Davila stated that since September Davila has had nothing to do with officer Jennings or with Black and Milds. Davila stated that he would submit to a polygraph.

H00023

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: 5 |