**E-FILED**
ILLINOIS DEPARTMENT OF CORRECTIONS
**Investigational Interview**
Friday, 17 June, 2005  04:26:55 PM
Clerk, U.S. District Court, ILCD

*Type or Print all applicable Information*

Case Number: 02-EMO-153
Investigator: EMRICH  15009
Last Name    Badge #

Date of incident: 2/24/02    Location of Incident: E. MOLINE CC

**Nature of Investigation:**

☒ Contraband    ☐ Death/Suicide    ☐ Drugs/Alcohol    ☐ Excessive Force    ☐ Intimidation/Threats    ☐ Misconduct
☐ Sexual Misconduct    ☐ Other (specify): TRADING & TRAFFICKING, CONDUCT OF INDIVIDUAL SOCIALIZING,
FAILURE TO REPORT OFFENSE OR INCIDENT
Subject of Investigation C/O JENNINGS _____ MARK    W.
Last Name                    First Name    MI    ID or Badge #

**Interviewee:**
Type:    ☐ Civilian    ☐ Employee    ☒ Inmate (Incarcerated)    ☐ Inmate (Electronic Detention)    ☐ Parolee

Name: Mantulla _____ Steven _____ J    N10463
Last                    First                    MI    ID/Badge #

Race:    ☒ White    ☐ African American    ☐ Asian    ☐ Native American    ☐ Hispanic    ☐ Other: _____

Gender:    ☒ Male    ☐ Female    Age: 39    DOB: 09/16/1962    Weight: 205    Height: 5'10"

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for ___/___
Business or Facility                    Position or Title    Years   Months

Regular days off (circle): M  T  W  Th  F  Sat  Sun    Office Phone #: (____)    Cell Phone #: (___)

**If Interviewee is an Inmate or Parolee:**

Facility: East Moline Correctional Center    Housing Assignment: AD 02-55

Sentenced to  8  /  ___  on 03/01/2001 ___    from  Cook
Years  Months    Date    County

for the offense(s) of: Attempted Burglary

Claims affiliation with:  none _____ as Steve/Kolack/Dago
STG    Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
Facility    Date

and is supervised by _____
Agent or District Office

**Interview was conducted:**

by  D.M. Persall LT
Name and Title

at  Internal Affairs _____ on 2/24/2002 ___ at  12:40 ___    ☐ a.m.  ☒ p.m.
Location    Date    Time

Constitutional Rights were: read:    ☒ No    ☐ Yes at _____    ☐ a.m. ☐ p.m.

See Interviewee's statement on the next page.

Interview was concluded at: _____ 2:15 ___    ☐ a.m.  ☒ p.m.

_____    _____
Signature of Interviewee    Signature of Interviewer

_____    _____
Name of Witness if any    Signature of Witness if any

Distribution:  File    Page  1  of  2    000024    Attachment:  6

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

## Investigational Interview
*(con't)*

| Interviewee: | STEVE MANTULLA | Case Number: | 02-6mo-153 |
| --- | --- | --- | --- |

**The Interviewee substantially stated:**

On 2/24/2002 at approximately 10:15 am Inmate Turner, Joseph B11090 came back on the wing and asked Mantulla if Mantulla had the other two boxes of Black and Milds that Turner had earlier given to Mantulla. Mantulla stated "yes", and told Turner that he (Mantulla) had one on him at the present. Mantulla stated that the reason that he (Mantulla) had one on him was if he (Mantulla) was out on the yard and Turner wanted the Black and Milds that Mantulla didn't want to have to go all the way back to the dorm to get them. Turner and Mantulla were standing talking in the middle of Dorm 2 by the mailboxes when Turner asked Mantulla if Mantulla had the two boxes of Black and Milds. Officer Mathis then called down the dorm and stated for one of them (Mantulla, Turner) to come where Mathis was. Mantulla asked if Mathis ment him and Mathis stated "No the other guy" meaning Turner. Turner then walked down towards Mathis and Mantulla turned and walked back to room 55, and Mantulla went to his (Mantulla's ) box got the other Black and Milds out of the box gave both of them to inmate Rogers, Melvin B13292 and asked Rogers to hold the Black and Milds for Mantulla. Mantulla was thinking that after searching Turner that they would also search Mantulla and then later Mantulla would get them back from Rogers and then give them back to Turner. Mantulla states that Turner has been getting the Black and Milds from Officer Jennings. Mantulla knows this because when Mantulla was on Dorm 2 Jennings was also assigned to Dorm 2. Mantulla approached Jennings and told Jennings that Jennings knew a good friend of Jennings and Jennings asked "Who?", and Mantulla stated Turner and Jenning told Mantulla that he (Jennings) did know him (Turner) and that Turner was a good guy. Mantulla was told by Turner that Jennings was giving Turner cigarettes while Turner was in Seg. Mantulla then told Jennings that Turner said something about 5 packs and Jennings told Mantulla to tell Turner to forget about it. Then approximately 5:30 am in the morning (same date) (sometime in November) Jennings kicked Mantulla's bed and told Mantulla to come out. Jennings then gave Mantulla 5 packs of Black and Milds and told Mantulla to give them to Turner that Turner knew the price. The next night Mantulla brought back a bag with approximately 10 packs of cigarettes in it and gave it to Jennings. Jennings then asked Mantulla what this was and Mantulla stated that it was from Turner and Jennings told Mantulla that Turner was a little short. Mantulla then told Jennings that Mantulla didn't know anything about that, that was between Jennings and Turner. Approximately one week later Jennings gave Mantulla another 5 packs of Black and Milds and Mantulla gave them to Turner. Turner gave Mantulla 15 packs to give to Jennings. Then approximatley one week later Jennings and Turner worked out a deal because then it was 25 packs of Newports for 10 boxes of Black and Milds. Turner gave Mantulla 10 packs of cigarettes to give Jennings and the other 15 would come later, for the mean time. Before Jennings got back to Dorm 2 Turner got transferred to Dorm 2 . Mantulla gave the 10 packs of Newports back to Turner and Turner sent them with the other 15 packs and went up towards the officer stations where Jennings was. After Turner came to Dorm 2 Mantulla was no longer th emiddle man. Turner did tell Mantulla after about 1 month in Dec or Jan. Jennings told Turner that he could no longer take cigarettes becasuse he (Jennings) had to many. So Turner bought Jennings a pair of boot (Lugz) for 14 boxes of Black and Milds. Then Jennings asked for Iverson tennis shoes but the commissary was out so Jennings asked for Rebock Ridges. Then another time gave Jennings a Panasonic Beard Trimmer. Turner used other inmates to purchase the boots and tennis shoes but Turner purchased the Panasonic Beard Trimmers himself, also some Copenhagen long cut. Jennings wanted 10 cans but Turner could only by 4 himself and get one other from another inmate and was going to have to owe Jennings the other 5 cans. Mantulla does not know who the inmates that bought the Lugz boots or the Rebock Ridges, however, Mantulla was the one who provided the 5th can of Copenhagen. This happened around January. But Friday the 22nd 2002 the female officer on dorm 1 and 2 let Turner go up to Dorm 3 & 4 where Jennings was working. Turner then came to Mantulla and asked Turner why and Turner stated that Jennings wanted Iversons. Turner indicated to Montalla that Jennings was bringing in 10 packs of Black and Milds but that Turner was going to try and get the price up to 15 packs. This morning at chow time Turner left and went up to talk to Jennings and came back and told Montula that he (Turner) got 4 packs of Black and Milds and David Sunflower seeds. Montulla asked if what Turner was getting for "Iversons" and Turner stated "No that he (Jennings) was bringing more in. Then that's when Turner asked Montulla to hold the two packs of Black and Milds.

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: 6 |

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

*Type or Print all applicable information*

Case Number: **02-EMO-153**

Investigator: **EMRICH   15007**
Last Name          Badge #

Date of Incident: **2/24/02**       Location of Incident: **E. MOLINE CC**

**Nature of Investigation:**

☒ Contraband   ☐ Death/Suicide   ☐ Drugs/Alcohol   ☐ Excessive Force   ☐ Intimidation/Threats   ☐ Misconduct
☐ Sexual Misconduct   ☐ Other (specify): **TRADING & TRAFFICKING, CONDUCT OF END, SOCIALING**
                                        **FAILURE TO REPORT OFFENSE OR INCIDENT**
Subject of Investigation: **C/O JENNINGS**                    **MARK        W**
                          Last Name                          First Name   MI   ID or Badge #

**Interviewee:**

Type:   ☐ Civilian   ☐ Employee   ☒ Inmate (Incarcerated)   ☐ Inmate (Electronic Detention)   ☐ Parolee

Name: **Riggs**                    **Brian**                          **B12025**
       Last                        First                    MI          ID/Badge #

Race:   ☐ White   ☒ African American   ☐ Asian   ☐ Native American   ☐ Hispanic   ☐ Other: _____

Gender: ☒ Male   ☐ Female   Age: **30**       DOB: **12/16/1971**       Weight: **270**   Height: **6'03"**

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for __/__
                Business or Facility           Position or Title        Years  Months

Regular days off (circle): *M  T  W  Th  F  Sat  Sun*   Office Phone #: (   ) _____   Cell Phone #: (   ) _____

**If Interviewee is an Inmate or Parolee:**

Facility: **East Moline Correctional Center**              Housing Assignment: **AD-03-22**

Sentenced to **10  /  __**  on **04/01/1998**       from **Cook**
              Years  Months        Date                     County

for the offense(s) of: **Armed Robery**

Claims affiliation with: **Gangster Disciples**              as **Nicco**
                          STG                              Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
                                                     Facility              Date

and is supervised by _____
                     Agent or District Office

**Interview was conducted:**

by **D.M. Pearsall LT.**
                        Name and Title

at **Internal Affairs**                    on **2/25/2002**   at **4:45**   ☐ a.m.
   Location                               Date              Time     ☒ p.m.

Constitutional Rights were: read:  ☒ No   ☐ Yes at _____   ☐ a.m. ☐ p.m.

See Interviewee's statement on the next page.

Interview was concluded at:                    ☐ a.m.
                          **5:24**              ☒ p.m.

_____                    _____
Signature of Interviewee                Signature of Interviewer

_____                    _____
Name of Witness if any                  Signature of Witness if any

000026                    Attachment: **7**

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

# Investigational Interview
### (con't)

| | |
|---|---|
| Interviewee: _BRIAN RIGGS_ | Case Number: _OL-GMD-153_ |

**The Interviewee substantially stated:**

That he (Riggs) was receiving 2 packs of Black and Milds a week from officer Jennings. That in return Riggs who worked 3rd shift dietary would make up special meals for Jennings. Riggs stated that by special Riggs ment that instead of normal crap that was given on 3rd shift Riggs would make eggs and other fresh food. Riggs stated that he had fixed a TV one day and received a Black and Mild Cigar (1) from officer Bea. Riggs stated that it was so long ago that Riggs didn't believe that is was even controlled then. Riggs stated that he (Riggs) didn't believe that Bea ever brought Black and Milds in that he (Bea) only give them for like fixing TV/or doing something for him like running errands. Riggs did not believe that Bea ws doing anything for personal gain. Riggs stated he (Riggs) had heard that officer Hart on 2nd shift was bringing in Black and Milds for an inmate and also that they were coming from the General Store the worker who used to be an officer. Riggs stated that he (Riggs) knew that inmate Turner was getting Black and Milds from Jennings at one time but Riggs would be surprised if Turner was still getting them from Jennings because Jennings had told Riggs that he (Jennings) was through fucking with him (Turner). Riggs stated that he (Riggs) was aware that Turner had Black and Milds because Riggs ahd seen Turner with them.

0000027

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: _7_ |
|---|---|---|---|

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

*Type or Print all applicable information*

**Case Number:** O2-EMO-153

**Investigator:** EMRICH  15009
Last Name  Badge #

**Date of Incident:** 2/24/02  **Location of Incident:** E. MOLINE C.C.

**Nature of Investigation:**

☒ Contraband ☐ Death/Suicide ☐ Drugs/Alcohol ☐ Excessive Force ☐ Intimidation/Threats ☐ Misconduct
☐ Sexual Misconduct ☐ Other (specify): TRADING & TRAFFICKING, CONDUCT OF IND, SOCIALIZING

**Subject of Investigation:** C/O JENNINGS  MARK  W
FAILURE TO REPORT OFFENSE OR INCIDENT
Last Name  First Name  MI  ID or Badge #

**Interviewee:**

**Type:** ☐ Civilian ☐ Employee ☒ Inmate (Incarcerated) ☐ Inmate (Electronic Detention) ☐ Parolee

**Name:** Krotel  Christopher  L  B35546
Last  First  MI  ID/Badge #

**Race:** ☒ White ☐ African American ☐ Asian ☐ Native American ☐ Hispanic ☐ Other: ___

**Gender:** ☒ Male ☐ Female **Age:** 30 **DOB:** 08/03/1971 **Weight:** 190 **Height:** 5'09"

**If Interviewee is a Civilian, Employee, or Parolee:**

**Employed at:** ___ as ___ for _1_
Business or Facility  Position or Title  Years  Months

**Regular days off** (circle): M T W Th F Sat Sun **Office Phone #:** ( ) **Cell Phone #:** ( )

**If Interviewee is an Inmate or Parolee:**

**Facility:** East Moline Correctional Center  **Housing Assignment:** AD-02-63

**Sentenced to** 14 / ___ **on** 06/01/1997 **from** Lake
Years  Months  Date  County

**for the offense(s) of:** Robbery

**Claims affiliation with:** no  **as** Chris
STG  Nickname(s)

**If on Parole or Electronic Detention, released from:** ___ **on** ___
Facility  Date

**and is supervised by** ___
Agent or District Office

**Interview was conducted:**

**by** D.M. Pearsall Lt.
Name and Title

**at** Internal Affairs  **on** 2/25/2002 **at** 6:50 ☐ a.m.
Location  Date  Time  ☒ p.m.

**Constitutional Rights were: read:** ☒ No ☐ Yes at ___ ☐ a.m. ☐ p.m.

See Interviewee's statement on the next page.

**Interview was concluded at:** 7:20 ☐ a.m. ☒ p.m.

___
Signature of Interviewee

___
Signature of Interviewer

___
Name of Witness if any

___
Signature of Witness if any

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

Investigational Interview
*(con't)*

| Interviewee: | CHRIS KRODEL | Case Number: | 02-EMO 133 |

**The interviewee substantially stated:**

Krodel has heard that Black and Mild Cigars have come in by the stock piles from a 3rd shift officer. Krodel stated that he didn't mess with the officer and has not received any Black and Mild Cigars from anyone. Krodel was asked about pornographic material and stated that he (Krodel) has received material from inmates going home and such throughout is incarceration. Krodel stated that he (Krodel) has never received pornographic material from a staff member. Krodel stated that he has not seen any pornographic material dated 2002 and that if his finger prints were on one than he would be lying to this officer. Krodel stated that his finger prints in no way could be on any pornographic magazine dated 2002. Krodel stated that he has passed material back and forth with inmate Peeples, John N82826 who Krodel also knows as "O". Krodel stated that inmate Turner and Riggs have tried to sell Krodel some Black and Mild Cigars and at one time Turner offered Krodel cigars for a "G" shot book and Krodel declined. Krodel did state that about a month or month and a half ago Turner asked Krodel if he (Krodel) knew of anyone who could remove a number from a Panasonic beard trimmer because Turner had to give to to his (Turner) Black and Mild guy. Krodel did not take the number off for Turner but did state to Turner that maybe an SOS pad would work.

ʊ00029

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: |

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

*Type or Print all applicable information*

Case Number: _02-EMO-153_
Investigator: _EMRICH_ _15009_
Last Name          Badge #

Date of Incident: _2/24/02_   Location of Incident: _E. MOLINE CC_

**Nature of Investigation:**
☒ Contraband ☐ Death/Suicide ☐ Drugs/Alcohol ☐ Excessive Force ☐ Intimidation/Threats ☐ Misconduct
☐ Sexual Misconduct ☐ Other (specify): _TRADING + TRAFFICKING, CONDUCT OF INDIVIDUAL, SOCIALIZIN_
_FAILURE TO REPORT OFFENSE OR INCIDENT_
Subject of Investigation: _C/O JENNINGS_ _MARK_ _W_
Last Name          First Name   MI   ID or Badge #

---

**Interviewee:**
Type: ☐ Civilian ☐ Employee ☒ Inmate (Incarcerated) ☐ Inmate (Electronic Detention) ☐ Parolee

Name: _Rogers_ _Melvin_ _L_ _B13292_
Last          First          MI   ID/Badge #

Race: ☐ White ☒ African American ☐ Asian ☐ Native American ☐ Hispanic ☐ Other:

Gender: ☐ Male ☐ Female Age: _34_ DOB: _01/16/1968_ Weight: _200_ Height: _6'03"_

---

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for _/_
Business or Facility          Position or Title          Years  Months

Regular days off (circle): M T W Th F Sat Sun   Office Phone #: (___)   Cell Phone #: (___)

---

**If Interviewee is an Inmate or Parolee:**

Facility: _East Moline Correctional Center_   Housing Assignment: _U2-S-09_

Sentenced to _7_ / _/_ on _12/01/1999_ from _Cook_
Years  Months  Date          County

for the offense(s) of: _Manu/Del 15 + Gr Heroin_

Claims affiliation with: _MIVL_ as _Buck_
STG          Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
Facility          Date

and is supervised by _____
Agent or District Office

---

**Interview was conducted:**

by _D.M. Persall LT_
Name and Title

at _Internal Affairs_ on _2/24/2002_ at _3:30_ ☐ a.m. ☒ p.m.
Location          Date          Time

Constitutional Rights were: read: ☒ No ☐ Yes at _____ ☐ a.m. ☐ p.m.
*See Interviewee's statement on the next page.*

---

Interview was concluded at: _____ ☐ a.m. ☐ p.m.

_____          _____
Signature of Interviewee          Signature of Interviewer

_____          _____
Name of Witness if any          Signature of Witness if any

---

Distribution: File   Page _1_ of _2_   ሀበ0030   Attachment: _9_

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**Investigational Interview**
*(con't)*

| Interviewee: | MELVIN ROGERS | Case Number: | 02-EMO-153 |
|---|---|---|---|

**The Interviewee substantially stated:**

On 2/24/2002 at approximately 10:30 or so Inmate Mantulla, Steve N10463 came up to Rogers in his (Rogers) room and stated ""Here hold these", Mantulla then handed Rogers 2 boxes of Black and Milds. Rogers tehn put the Black and Milds in his (Rogers) property box then went and ate. The next thing Rogers knew was that an inmate told Rogers that his (Rogers) room was under Investigation. Rogers went back to his (Rogers) cell and Lt. Gonzales grabbed Rogers and Rogers to see Captain Ricke, the Major was their also and they asked Rogers where he got the Black and Milds. Rogers then told Captain Ricke where they came from. The came thing stated in this report. Rogers stated that he(Rogers) would submit to a polygraph. Rogers stated that Mantulla and Turner have been selling Black and Milds for a long time since Nov, or Dec. Turner would get the Black and Milds and Mantulla would help sell them. Rogers stated that Turner was supposly getting the Black and Milds from an officer and that there was an Inmate -nic name Nico" (Riggs) on Dorm 3 or 4 was getting them also. The officers name was never stated.

u00031

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment |
|---|---|---|---|

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
**Investigational Interview**

*Type or Print all applicable Information*

Case Number: _02-EMO-153_
Investigator: _EMRICH_    _15009_
Last Name    Badge #

Date of Incident: _2/24/02_    Location of Incident: _E. MOLINE CC_

**Nature of Investigation:**
☒ Contraband  ☐ Death/Suicide  ☐ Drugs/Alcohol  ☐ Excessive Force  ☐ Intimidation/Threats  ☐ Misconduct
☐ Sexual Misconduct  ☐ Other (specify) _TRADING & TRAFFICKING CONDUCT OF INDIVIDUAL, SOCIALIZING_
_FAILURE TO REPORT OFFENSE OR INCIDENT_
Subject of Investigation: _C/O JENNINGS_    _MARK_    _W_
Last Name    First Name    MI    ID or Badge #

**Interviewee:**
Type:  ☐ Civilian  ☐ Employee  ☒ Inmate (Incarcerated)  ☐ Inmate (Electronic Detention)  ☐ Parolee

Name: _Peeples_    _John_    _D_    _N82826_
Last    First    MI    ID/Badge #

Race:  ☐ White  ☒ African American  ☐ Asian  ☐ Native American  ☐ Hispanic  ☐ Other: _____

Gender: ☒ Male  ☐ Female    Age: _31_    DOB: _09/07/1970_    Weight: _215_    Height: _5'05"_

**If Interviewee is a Civilian, Employee, or Parolee:**
Employed at: _____ as _____ for _/_ 
Business or Facility    Position or Title    Years    Months
Regular days off (circle):  M  T  W  Th  F  Sat  Sun    Office Phone #: ( )    Cell Phone #: ( )

**If Interviewee is an Inmate or Parolee:**
Facility: _East Moline Correctional Center_    Housing Assignment: _AD 02-55_

Sentenced to _15_ _/_ on _10/01/1997_    from _Peoria_
Years    Months    Date    County
for the offense(s) of: _Armed Robbery_

Claims affiliation with: _CVL_    as _O_
STG    Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
Facility    Date
and is supervised by _____
Agent or District Office

**Interview was conducted:**

by _D.M. Pearsall LT._
Name and Title

at _Internal Affairs_    on _2/25/2002_    at _8:05_  ☐ a.m.  ☒ p.m.
Location    Date    Time

Constitutional Rights were: read:  ☒ No  ☐ Yes at _____  ☐ a.m. ☐ p.m.
See Interviewee's statement on the next page.

Interview was concluded at: _____  ☐ a.m.
_8:45_  ☒ p.m.

_____    _____
Signature of Interviewee    Signature of Interviewer

_____    _____
Name of Witness if any    Signature of Witness if any

Attachment: _10_

Distribution:  File    Page _1_ of _2_    000032

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**Investigational Interview**
*(con't)*

| Interviewee: | JOHN PEEPLES | Case Number: | 02-EMO-153 |
|---|---|---|---|

**The Interviewee substantially stated:**

That he (Peeples) had magazines that showed penetration and that he had obtained these magazines from other inmates. Peeples stated that he has a Hustler Magazine dated 2002 and that he has others also that he has passed back and forth to other inmates. Peeples stated that one inmate that he has passed pornagraphy back and forth to was inmate Krodel, Christopher B35546 and that it has been recent and that Krodel has seen and been in possession of the magazine (Hustler) dated 2002 and then returned the magazine to Peeples. That Peeples and Krodel pass magazine (pornography) back and forth all the time. Peeples stated that he (Peeples) has not been in possession of Black and Milds since April of 2001 when Peeples went to Seg. Peeples stated that eh has no first hand knowleged of how Black and Milds are getting into the institution and stated that the Hustler magazine and the Barely Legal were given to Peeples from an inmate named Bowski who just went home Monday or Tuesday of last week. Peeples stated that he (Peeples) would submit to a polygraph.

000033

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: 10 |
|---|---|---|---|

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

| | |
|---|---|
| Case Number: | 02-EMO-153 |
| Investigator: | Emrich     15009 |
| | Last Name        Badge # |

*Type or Print all applicable information*

Date of Incident: 02/24/02    Location of Incident: E. MOLINE C.C.

**Nature of Investigation:**

☒ Contraband ☐ Death/Suicide ☐ Drugs/Alcohol ☐ Excessive Force ☐ Intimidation/Threats ☐ Misconduct
☐ Sexual Misconduct ☐ Other (specify): TRADING + TRAFFICKING, CONDUCT OF INDIVIDUAL, SOCIAL FAILURE TO REPORT OFFENSE OR INCIDENT

Subject of Investigation: C/O JENNINGS      MARK   W.
                Last Name               First Name      MI      ID or Badge #

---

**Interviewee:**

Type: ☐ Civilian ☐ Employee ☒ Inmate (Incarcerated) ☐ Inmate (Electronic Detention) ☐ Parolee

Name: Hopkins             Tory           J   K80996
         Last               First        MI    ID/Badge #

Race: ☐ White ☒ African American ☐ Asian ☐ Native American ☐ Hispanic ☐ Other: _____

Gender: ☒ Male ☐ Female   Age: 21     DOB: 09/10/1980     Weight: 180     Height: 6'02"

---

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for ___ /
          Business or Facility                Position or Title       Years   Months

Regular days off (circle): M T W Th F Sat Sun   Office Phone #: ( ) _____   Cell Phone #: ( ) _____

---

**If Interviewee is an Inmate or Parolee:**

Facility: East Moline Correcitonal Center      Housing Assignment: U2-D-12

Sentenced to 6 / __ on 04/01/2000    from DeKalb
       Years   Months          Date                    County

for the offense(s) of: Manu/Del 15 + Gr Cocaine

Claims affiliation with: no       as _____
                      STG                        Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
                                   Facility                      Date

and is supervised by _____
                   Agent or District Office

---

**Interview was conducted:**

by D.M. Pearsall LT.                        Name and Title

at Internal Affairs              on 2/26/2002     at 11:40 ☒ a.m. ☐ p.m.
    Location                     Date          Time

Constitutional Rights were: read: ☒ No ☐ Yes at _____ ☐ a.m. ☐ p.m.
See Interviewee's statement on the next page.

Interview was concluded at: _____ ☐ a.m. ☐ p.m.

_____
Signature of Interviewee                       Signature of Interviewer

_____
Name of Witness if any                       Signature of Witness if any

---

000034          Attachment: 11

Distribution: File          Page 1 of 2      DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**Investigational Interview**
*(con't)*

| Interviewee: | _TORY HOPKINS_ | Case Number: _03-EMO-153_ |
|---|---|---|

**The Interviewee substantially stated:**

Hopkins stated that he (Hopkins) bought a pair of Lugz boots size 12 from commissary for inmate Turner, Joseph B11090 who Hopkins knows as "John" for 5 to 7 boxes of Black and Milds Cigars. Hopkins stated that he has had a couple other transactions with Turner in which Hopkins paid 5 Newport packs of cigarettes for 1 box of Black and Milds. Hopkins stated that the Black and Milds were for his personal consumption and did not give or sell any of the Black and Milds to any one else.

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**TADLOCK, ALAN**

| | |
|---|---|
| **From:** | WYANT, GARY |
| **Sent:** | Tuesday, February 26, 2002 3:44 PM |
| **To:** | TADLOCK, ALAN |
| **Cc:** | MONTGOMERY, JESSE |
| **Subject:** | FW: Requested Transfers |

Alan, inmates were transferred as listed below. Situation changed with Mantulla and he was transferred to Pontiac.

-----Original Message-----
| | |
|---|---|
| **From:** | WYANT, GARY |
| **Sent:** | Tuesday, February 26, 2002 11:39 AM |
| **To:** | EGELHOFF, JUDIE |
| **Cc:** | MONTGOMERY, JESSE |
| **Subject:** | Requested Transfers |

Following consultation with A.D.D. Montgomery, transfers for the following inmates is being requested. These transfers are being requested due to the listed inmates involvement with trading and trafficking with staff members.

- Riggs       B12025       transfer requested to Hill C.C.
- Krodell     B35546       transfer requested to Hill C.C.
- Davila      R00947       transfer requested to IL. River C.C.
- Mantulla    N10463       transfer requested to Pontiac C.C.
  Turner      B11090       transfer requested to Stateville C.C.

I am requesting to move these inmates by car today. Thank you.

Gary L. Wyant
Warden
East Moline Correctional Center

U00036

ATTACHMENT 12

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

*Type or Print all applicable information*

| Case Number: | 02-EMO-153 |
|---|---|
| Investigator: | EMRICH |
| | Last Name　　　　　　Badge # |

Date of Incident: 2/24/2002　　　　Location of Incident: East Moline Correctional Center

**Nature of Investigation:**

☒ Contraband　☐ Death/Suicide　☐ Drugs/Alcohol　☐ Excessive Force　☐ Intimidation/Threats　☐ Misconduct
☐ Sexual Misconduct　☒ Other (specify): Trading & Trafficking, Conduct of Individual, Socializing, Failure to Report *Offense or Inj.*

Subject of Investigation: JENNINGS　　　　　　　MARK　　　　W.
　　　　　　　　　　　　　Last Name　　　　　　　First Name　　　MI　　ID or Badge #

**Interviewee:**

Type:　☐ Civilian　☐ Employee　☒ Inmate (Incarcerated)　☐ Inmate (Electronic Detention)　☐ Parolee

Name: TURNER　　　　　　　　JOSEPH (JOHN)　　　　　B11090
　　　　　　　Last　　　　　　　First　　　　　MI　　ID/Badge #

Race:　☒ White　☐ African American　☐ Asian　☐ Native American　☐ Hispanic　☐ Other:

Gender:　☒ Male　☐ Female　Age: 32　DOB: 12/02/1969　Weight: 294　Height: 6' 1"

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for ___1___
　　　　　　　Business or Facility　　　　Position or Title　　　　Years　Months

Regular days off (circle): M T W Th F Sat Sun　Office Phone #: ( 　 )　　Cell Phone #: ( )

**If Interviewee is an Inmate or Parolee:**

Facility: Stateville Correctional Center　　　　Housing Assignment: 12, D-4

Sentenced to __10__ / ____ on 06/10/1998　　from Cook
　　　　　　Years　Months　　Date　　　　　　County

for the offense(s) of: Aggravated Arson

Claims affiliation with: Denies　　　　　　as John
　　　　　　　　　　　STG　　　　　　Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
　　　　　　　　　　　　　　　　Facility　　　　　　Date

and is supervised by _____
　　　　　　　　　Agent or District Office

**Interview was conducted:**

by Anita Emrich, Inv.
　　　　　　Name and Title

at Stateville Correctional Center　　　　on 3/5/2002　　at 10:50　　☒ a.m.
　　　Location　　　　　　　　　Date　　　Time　　☐ p.m.

Constitutional Rights were read:　☒ No　☐ Yes at _____ ☐ a.m. ☐ p.m.

See Interviewee's statement on the next page.

Interview was concluded at: _____ 12:10　☐ a.m. ☒ p.m.

X _____
　Signature of Interviewee　　　　　　　Signature of Interviewer

_____
Name of Witness if any　　　　　　　Signature of Witness if any

Distribution:　File　　　　　Page __1__ of __4__　　　U00037　　Attachment: 13

DOC 0080 (Eff. 1/2002)

**Investigational Interview**
*(con't)*

| Interviewee: | Joseph Turner | Case Number: | 02-EMO-153 |
|---|---|---|---|

The Interviewee substantially stated:

TURNER stated that he was incarcerated at East Moline Correctional Center from 03/07/01 to 02/26/02. TURNER went to school and was a chaplain's clerk. TURNER related that, in 08/01, Inmate JOSE DAVILA, R-00947, moved into TURNER's Room #30 in Dorm #6. TURNER noticed that DAVILA had Black and Mild cigars which weren't available at the commissary. TURNER remembered telling DAVILA that the Black and Milds were worth money and that he could get 1 pack of cigarettes for one cigar. TURNER stated that, 2 days later, DAVILA brought in 10 boxes of Black and Mild cigars, with 5 cigars in each box. DAVILA sold TURNER 10 cigars for $18.00 worth of commissary. TURNER stated that he sold the cigars for 10 packs of cigarettes. TURNER stated that DAVILA came in one morning with 25 boxes of cigars. TURNER figured he was getting them from staff in dietary where DAVILA worked third shift. TURNER added that every couple of weeks, DAVILA also brought in bags of sunflower seeds and packs of chewing gum. TURNER stated that DAVILA brought in an average of 20 boxes of cigars a week and each time, he traded TURNER a few boxes for cigarettes. TURNER figured that, if he were caught with the Black and Milds, he would say he got them from another inmate, since they were still sold at other institutions. TURNER stated that, when the 90 day staff assignments changed in mid 10/01, DAVILA stopped getting Black & Milds. TURNER stated that he went to Segregation on 10/20/01 for a different issue and lost track of DAVILA. TURNER stated that Officer MARK JENNINGS, who had worked in Dorm #6, was working in Segregation. TURNER stated that JENNINGS asked him how he was and he told JENNINGS he could use a cigarette. TURNER stated that JENNINGS gave him half a pack of cigarettes and matches. TURNER wondered why JENNINGS was being nice to him since they'd never really talked before. TURNER stated that, after he got out of Segregation on 10/31/01, a friend, Inmate STEVE MANTULLA, said that JENNINGS was working third shift on MANTULLA's Dorm #2. TURNER owed JENNINGS 3 packs of cigarettes so he gave them MANTULLA to give to JENNINGS. TURNER stated that, the next day, MANTULLA said that JENNINGS didn't want the cigarettes, but JENNINGS asked if TURNER wanted more cigars. TURNER stated that, at that point, he realized that DAVILA must have gotten the Black & Milds from JENNINGS. TURNER stated that he was living on Dorm #12, so MANTULLA became the middle man, and returned with 5 boxes of Black & Mild cigars. TURNER stated that MANTULLA sold 2 of the boxes for 3 packs of cigarettes per box and TURNER sold 3 boxes of cigars for 8 packs of cigarettes. TURNER stated that they thought that JENNINGS was charging $1.00 per cigar. TURNER related that, when MANTULLA took JENNINGS their 11 packs of cigarettes, JENNINGS told MANTULLA that TURNER shorted him, it was

| Interviewee's Signature | _Cinitulmu_ | | Attachment: 13 |
|---|---|---|---|
| | Interviewer's Signature | Witness's Signature | |

**Investigational Interview**
*(con't)*

| Interviewee: Joseph Turner | Case Number: 02-EMO-163 |
| --- | --- |

3 packs of cigarettes for every box of 5 cigars. TURNER had MANTULLA ask JENNINGS what they should do since they sold them short and JENNINGS said that from then on it was 3 packs of cigarettes for 1 box of cigars. TURNER stated that MANTULLA got 2 to 5 boxes of cigars each week. TURNER stated that he smoked free and MANTULLA got commissary for all of their trading. TURNER remembered that JENNINGS also brought MANTULLA shaving cream, red crushed pepper, cologne and a watch in exchange for cigarettes. TURNER stated that, by Christmas 2001, he was living in Dorm #2 and JENNINGS was working there 2 days a week. TURNER stated that he took cigarettes directly to JENNINGS in the control center one night to exchange for cigars and JENNINGS said not to bring them to him there. TURNER stated that JENNINGS then set it up so that he unlocked the bathroom in the middle of the living unit of Dorm #2 when he came in for "count" and put cigars in the desk drawer. TURNER stated that he went into the bathroom between 12:00 a.m. and 1:30 a.m. and picked up cigars and /or dropped off cigarettes. TURNER stated that JENNINGS was bringing in 5 to 10 boxes of Black & Milds at that time and was charging 2 1/2 packs of cigarettes per box. TURNER stated that he regularly went upstairs during third shift and talked with JENNINGS and, after 2 to 3 weeks, JENNINGS said that he didn't want anymore cigarettes. TURNER understood that JENNINGS sold or traded the cigarettes on the street. JENNINGS once said he traded some cigarettes for an air compressor. TURNER stated that, in early 01/02, JENNINGS brought in 10 boxes of cigars and said that he could use a pair of "Lugz" boots (from the commissary). TURNER stated that he had Inmate DAVE DAVIS, K-69739 purchase size 10 boots in the commissary and he gave DAVIS 20 packs of cigarettes for the boots. TURNER stated that he put the boots in the desk drawer in the bathroom and told JENNINGS that they were there. TURNER stated that he sold the 10 boxes of cigars for cigarettes and then he had too many cigarettes. TURNER related that JENNINGS next wanted gym shoes so TURNER traded Inmate "J-DOG" cigars for commissary gym shoes. TURNER put the gym shoes in the desk drawer and JENNINGS brought him more cigars. TURNER stated that JENNINGS moved upstairs to Dorm #3 & #4 and TURNER routinely went up and talked with JENNINGS at breakfast time w/ female CO's knowledge. TURNER stated that in late January or early February, JENNINGS wanted a beard trimmer and " Skoal" , so TURNER purchased the items at the commissary and traded them with JENNINGS for more cigars. JENNINGS next wanted "Al Iverson" gym shoes which cost $70.00 at the commissary. TURNER stated that JENNINGS gave him a pack of sunflower seeds and said to get him the shoes. TURNER stated that, on 02/24/02, he was on his way to trade 12 packs of cigarettes with Inmate "Cobra" who lived on Unit #2 for the "Al Iverson's" . TURNER stated that he was stopped and taken to Internal Affairs where he explained that he was buying a pair of shoes with the 12 packs of cigarettes he had on him. TURNER stated that he was asked about the Black & Mild cigars and he told them the same information as in this

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: 13 |
| --- | --- | --- | --- |

Distribution: File        Page 3 of 4        000039        DOC 0080 (Eff. 1/2002)

**Investigational Interview**
*(con't)*

| Interviewee: _Joseph Turner_ | Case Number: _O2-EMO - 153_ |

interview. TURNER related further that he had seen Inmate BRIAN RIGGS, B-12025 , on the yard selling Black & Milds. TURNER stated that RIGGS worked third shift in dietary and packed JENNINGS lunch bag with meat for JENNINGS' dogs, TURNER stated that, when he went up to Dorm #3 &#4, there was a greasy brown paper sack next to JENNINGS and JENNINGS bragged about how his dogs got cheeseburgers and steaks on the state. TURNER stated that Black & Milds were also coming in through Inmate CHRIS KRODEL, B-35546 who lived in the same room as TURNER. TURNER related that one day he went with KRODEL to General Stores, where KRODEL worked, to get some cheese and spices to make a Spanish dish. TURNER stated that KRODEL's boss, JOHN KRUP came out and TURNER said he was there for a job interview and KRODEL disappeared into the back. KRUP said that he didn't have an opening anymore and then KRODEL reappeared. TURNER stated that KRUP told KRODEL he had "information" for him and handed KRODEL a large manila envelope. KRODEL gave TURNER some vegetables and TURNER put them in his pocket. TURNER stated that, as they walked back to their unit, KRODEL pulled pornographic magazines and a box of Black & Mild cigars out of the envelope and put the cigars in his pocket. TURNER stated that KRODEL later gave the cigars to Inmate JOHN PEEPLES, N-82826, another cellmate. TURNER stated that he saw KRODEL give PEEPLES Black & Milds on 2 to 3 different occassions. TURNER added that he couldn't recall when or where, but he had seen Officer BEA give single Black & Mild cigars to inmates who helped him out. TURNER indicated that he would take a polygraph test regarding this information.

| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment: _13_ |

ILLINOIS DEPARTMENT OF CORRECTIONS

## Polygraph Consent

**Examinee's Name** (print):    _JOSEPH (JOHN) TURNER B11090_

☐ I do hereby voluntarily, without duress, coercion, threats, or promise of reward or immunity, consent to be examined by a polygraph detection of deception technique, commonly referred to as a Lie Detector Test.

I do hereby voluntarily approve the necessary components to be attached to my person where necessary. I further release and forever hold harmless the State Of Illinois, its agents or employees and affiliates or both from any responsibility or action resulting from this examination.

I further agree that the final results of this examination may be made known or given to the proper person or persons as determined by the Illinois Department of Corrections. I understand that I may receive a copy of the results of the polygraph examination by making a written request to the Internal Investigations Unit at the:

   Illinois Department of Corrections
   1301 Concordia Court
   P. O. Box 19277
   Springfield, IL 62794-9277

☐ (Examiner to check only if applicable) I am a victim of Criminal Sexual Assault, Aggravated Criminal Sexual Assault, Predatory Criminal Sexual Assault on a Child, Criminal Sexual Abuse, or Aggravated Criminal Sexual Abuse. As a victim I understand that I am not required to submit to this polygraph examination as a condition for proceeding with the investigation, charging, or prosecution of this offense and such polygraph test shall be administered solely at my request. I further understand that if I refuse to submit to this polygraph examination such refusal shall not mitigate against the investigation, charging, or prosecution of the pending case as originally charged.

_____        ____/____/____
Examinee's Signature                                     Date

☐ I hereby refuse to submit to the polygraph examination.

_____        ____/____/____
Examinee's Signature                                     Date

**Witness:**

   _ANITA EMRICH_
   Print Name of Witness                                      ID or Badge# (if applicable)

   _____        _3,15,02_
   Signature of Witness                                     Date

☐ As witnessed above, the examinee refused to submit to the polygraph examination and refused to sign this form.

Distribution: File

1100041

DOC 0069 (Eff. 1/2002)
(Replaces DC 7186 & 7187)

*Printed on Recycled Paper*

ATTACHMENT 14

```
 IDOC #: B11090 TURNER, JOSEPH              BEG DTE:  7  1 01   END DTE:  3  8 0
 NON-SMOKING REQ: NO
```

| ------FROM-------- | ---TO--- | -LIVING UNIT- | NON SMOKE | REASON FOR MOVE |
|---|---|---|---|---|
| 2 26 02  20:06:15 | 00 | STA I2 D  04 | N | ROUTINE |
| 2 26 02  15:25:14 | 2 26 02 | STA 0U 0U 0U | N | TRANSFER |
| 2 25 02  13:47:04 | 2 26 02 | EMO U2 S  04 | N | TRANSFER |
| 2 24 02  18:39:24 | 2 25 02 | EMO U2 S  09 | N | ROUTINE |
| 2 24 02  11:00:39 | 2 24 02 | EMO U2 S  04 | N | ROUTINE |
| 1 16 02  11:09:56 | 2 24 02 | EMO AD 02 55 | N | ROUTINE |
| 1  9 02  11:26:57 | 1 16 02 | EMO AD 02 55 | N | ROUTINE |
| 12 12 01  08:49:52 | 1  9 02 | EMO AD 02 56 | N | ROUTINE |
| 12  7 01  11:25:49 | 12 12 01 | EMO U2 B  38 | Y | ROUTINE |
| 11 20 01  13:34:56 | 12  7 01 | EMO U2 B  15 | Y | ROUTINE |
| 11 20 01  09:39:42 | 11 20 01 | EMO U2 B  05 | N | ROUTINE |
| 11  9 01  11:01:26 | 11 20 01 | EMO U2 C  13 | N | ROUTINE |

FS

```
NEXT KEY DATA: IDOC #: B11090  DTE BEG:  7  1 01   DTE END:  3  8 02
PF7: PAGE BACK        PF8: PAGE FWD
```

IDOC #: B11090 TURNER, JOSEPH          BEG DTE:  7  1 01    END DTE:  3  8 0.
NON-SMOKING REQ: NO

```
                                                NON
------FROM--------    ---TO---    -LIVING UNIT-  SMOKE    REASON FOR MOVE
10 31 01  17:26:06    11  9 01    EMO U1 12 32     N      ROUTINE
10 22 01  16:20:00    10 31 01    EMO U2 S  23     N      ROUTINE
 3 19 01  11:55:41    10 22 01    EMO U1 06 30     N      ROUTINE
```

FS
NEXT KEY DATA: IDOC #: B11090  DTE BEG:  7  1  01     DTE END:  3  8  02
PF7: PAGE BACK       PF8: PAGE FWD
INQUIRY COMPLETE                      PLEASE ENTER NEXT KEY DATA

000043

ATTACHMENT 15

**SHAKEDOWN RECORD/CONFISCATED CONTRABAND**
(Tag/Receipt/Report/Chain-of-Custody Record)

EXHIBIT NO.
CLIC NO.

Date 2.26.02 Time 11:14 Bldg/Area I-A

Living Area # NP                    Occupied? Yes    No ✓

Violator Twine                      No. B11050

Was Any Contraband Found? Yes ✓ No

Item(s) (Description and Circumstances of Discovery)
Type Writer Ribbin Taken
from Broths Type Writer nd
ML 100 Standard
# FM057624
Type David Prind Cartrive
Cost $5.73.02

Witness M. Iglin

Was a Disciplinary Report Written? Yes    No ✓

Was an Incident Report Written? Yes    No ✓

Employee's Signature

Badge No. 7759     Date 2.26.02 Time 11:05

Supervisor - Date Received 2/26/02        Time

Major    Minor    Signature

Disposition

Date 2/26/02    Time 1100    Initials

Custodian - Date Received 2/26/02    Time

Major    Minor    Signature

Chain-of-Custody After the Custodian has Received the Item

From                            To

Date 2/26/02    Time 1130

From                            To

Date                            Time

From                            To

Date                            Time

From                            To

Date                            Time

From                            To

Date                            Time

Final Disposition

Date                            Custodian's Initials

DC 252 (Rev. 6/87)  IL 426-0042        cc 1. With Item (Tag); 2. Supervisor; 3. Employee; 4. Disciplinary Report; 5. Violator

000044

P 1 OF 3        ATTACHMENT





P. 3 OF 3

16

Illinois Department of Corrections
INTERNAL INV ESTIGATIONS
POLYGRAPH EXAMINATION

| Subject's Name (Last, first, middle) | Institution No. | Case Number | Date of Test |
|---|---|---|---|
| Turner, Joseph | B11090 | 02-EMO-153 | 3/16/02 |
| Place Tested | Investigator (Pre-Poly) | Purpose of Examination | |
| Stateville CC | Emrich | To determine the truthfulness of this | |

subject's statements regarding allegations of non-professional conduct by staff.

**INTERVIEW:**

During the interview, this subject stated C/O Jennings gave him some Black and Mild cigars.

| | **RELEVANT TEST QUESTIONS:** | **ANSWER** |
|---|---|---|
| 1). | While at E. Moline, did C/O Jennings hand you several boxes of Black and Milds? | YES |
| 2). | Did you pay C/O Jennings in exchange for Black and Mild cigars? | YES |
| 3). | While at E Moline, did C/O Jennings hand you Black and Milds on more than one occasion? | YES |

**OPINION OF EXAMINER BASED UPON SUBJECT'S POLYGRAPH RECORDS:**

☒   Subject tested truthful on questions        1,2,3

Date Typed:        3/25/02                    Michael J. Musto, Polygraph Examiner III

DC 7189
IL 426-0141

1100047

P / OF /                    ATTACHMENT / 7

OM0SM002          ILLINOIS DEPARTMENT OF CORRECTIONS -- OTS        5/16/
2
PAGE: 0001     SCHEDULED MVMT -- INMATE MVMT HISTORY INQUIRY
14:08:35

IDOC#: B11090 TURNER, JOSEPH        1 A L  DISTRICT 1       03/19/2002
        SEX OFFENDER REGISTRY REQUIRED:
INMATE CURRENTLY ON PAROLE

                      MOVEMENT                  PARENT
   ---DATE--- -TIME- --------TYPE---------- -FROM- -TO-  -----INSTITUTION-------

   03 19 02 13:17 PAROLE OUT        STA  001  STATEVILLE
   02 26 02 15:25 TRANSFER IN       TRA  STA  STATEVILLE
   02 26 02 14:10 TRANSFER OUT      EMO  STA  EAST MOLINE
   03 07 01 20:49 TRANSFER IN       TRA  EMO  EAST MOLINE
   03 07 01 05:39 TRANSFER OUT      SHA  EMO  SHAWNEE
   07 21 00 13:20 TRANSFER IN       TRA  SHA  SHAWNEE
   07 21 00 12:15 TRANSFER OUT      VIE  SHA  VIENNA
   01 14 99 22:16 TRANSFER IN       TRA  VIE  VIENNA
   01 14 99 10:00 TRANSFER OUT      IRI  VIE  ILLINOIS RIVER

NEXT KEY DATA: IDOC #: B11090
PF7: PAGE BACK  PF8: PAGE FWD

000048

P / OF /

ATTACHMENT 18

ILLINOIS DEPARTMENT OF CORRECTIONS
## Investigational Interview

*Type or Print all applicable information*

Case Number: 02-EMO-153
Investigator: EMRICH
                        Last Name          Badge #

Date of Incident: 02/24/02    Location of Incident: E. MOLINE CC.

**Nature of investigation:**

☒ Contraband  ☐ Death/Suicide  ☐ Drugs/Alcohol  ☐ Excessive Force  ☐ Intimidation/Threats  ☐ Misconduct
☐ Sexual Misconduct  ☐ Other (specify): TRADING & TRAFFICKING, CONDUCT OF INDIVIDUAL, SOCIALIZING, FAILURE TO REPORT OFFENSE OR INCIDENT

Subject of Investigation: C/O JENNINGS          MARK          W.
                          Last Name             First         MI      ID or Badge #

**Interviewee:**

Type:  ☐ Civilian  ☐ Employee  ☐ Inmate (Incarcerated)  ☐ Inmate (Electronic Detention)  ☐ Parolee

Name: Workman          Stephanie          L     5065
         Last              First          MI   ID/Badge #

Race: ☒ White  ☐ African American  ☐ Asian  ☐ Native American  ☐ Hispanic  ☐ Other:

Gender: ☐ Male  ☒ Female   Age: 30   DOB: 9/19/71   Weight: 125   Height: 500

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: East Moline Correctional Center  as  Correctional Officer  for 1 8.5
              Business or Facility                    Position or Title      Years  Months

Regular days off (circle):  M  T  W  Th  F  Sat  Sun   Office Phone #: (   )          Cell Phone #: (   )

**If Interviewee is an Inmate or Parolee:**

Facility: _____          Housing Assignment: _____

Sentenced to ____ / ____ on _____    from _____
              Years  Months    Date                        County

for the offense(s) of: _____

Claims affiliation with: _____ as _____
                              STG                              Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
                                                        Facility                    Date

and is supervised by _____
                        Agent or District Office

**Interview was conducted:**

by D. M. PEARSALL, LIEUTENANT
        Name and Title

at INTERNAL AFFAIRS          on 5/6/2002  at 0700  ☒ a.m.
     Location                    Date          Time   ☐ p.m.

Constitutional Rights were: read: ☒ No  ☐ Yes at _____  ☐ a.m. ☐ p.m.

See interviewee's statement on the next page.

Interview was concluded at: 0740  ☒ a.m.
                                    ☐ p.m.

_Workman_  5065                              _____
Signature of Interviewee                      Signature of Interviewer

_____                       _____
Name of Witness if any                        Signature of Witness if any

Distribution:  File          Page 1 of 2          U000050          Attachment: 21

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**Investigational Interview**
*(con't)*

| Interviewee: | Workman, Stephanie | Case Number: |
|---|---|---|

The interviewee substantially stated:

Workman was asked if she remembered inmate Turner Joseph B11090 and she (Workman) stated "yes" Workman was asked if she remembered Turner asking to go up to Dorms 3 & 4 to speak with Officer Jennings Mark. Workman stated "yes" Workman stated that after 11:00 pm count was over Turner would ask Workman if he (Turner) could go up and talk with officer Jennings. Workman would then call Jennings in Dorm 3 & 4 and tell Jennings that there was an inmate (?) that wanted to talk with Jennings. Jennings would then state ok and tell Workman to send him (Turner) on up. Workman stated that Turner would only spend 5 or 10 minutes talking with Jennings. Workman stated that this happened twice that Workman could remember and that Workman did not remember any instances of this happening in the morning. Workman stated that she did not notice whether or not Turner had anything on him (Turner) when he left or came back. Workman stated that he could have had things in his pockets but did not know. Workman stated that she does not remember if Jennings ever called and asked for Turner. Workman stated that other then the porter Workman did not know of any other inmate who would go up and talk to Jennings. Workman was shown a photo of Turner, Joseph B11090 and asked if she recognized Turner as the inmate that was sent to dorm 3 & 4 officer Jennings. Workman stated "yes" Workman stated that if asked that she (Workman) would submit to a polygraph.

End of Report

---

| x Workman so45 | | |
|---|---|---|
| Interviewee's Signature | Interviewer's Signature | Witness's Signature | Attachment |

U00051

DOC 0080 (Eff. 1/2002)
(Replaces DC 412, 412A, 1114, 1114-1, 1114-2 & 7185)

**ILLINOIS DEPARTMENT OF CORRECTIONS**
## Investigational Interview

*Type or Print all applicable information*

Case Number: _02-Emo-153_

Investigator: _EMRICH / 3005_
Last Name / Badge #

Date of Incident: _2/24/02_    Location of Incident: _E. MOLINE CC_

**Nature of Investigation:**    _FAILURE TO REPORT OFFENSE OR INCIDENT_
☐ Contraband    ☐ Death/Suicide    ☐ Drugs/Alcohol    ☐ Excessive Force    ☐ Intimidation/Threats    ☐ Misconduct
☐ Sexual Misconduct    ☐ Other (specify): _TRADING + TRAFFICKING, CONDUCT OF INDIVIDUAL, SOCALIZING_

Subject of Investigation: _CO    JENNINGS_    _MARK_    _W_
Last Name    First Name    MI    ID or Badge #

**Interviewee:**

Type:    ☐ Civilian    ☐ Employee    ☒ Inmate (Incarcerated)    ☐ Inmate (Electronic Detention)    ☐ Parolee

Name: _DAVILA_    _JOSE_    _A_    _R00947_
Last    First    MI    ID/Badge #

Race:    ☐ White    ☐ African American    ☐ Asian    ☐ Native American    ☒ Hispanic    ☐ Other:

Gender: ☒ Male    ☐ Female    Age: _37_    DOB: _11-18-64_    Weight: _269_    Height: _5'11"_

**If Interviewee is a Civilian, Employee, or Parolee:**

Employed at: _____ as _____ for _/_ Years _/_ Months
Business or Facility    Position or Title

Regular days off (circle):  M  T  W  Th  F  Sat  Sun    Office Phone #: ( )    Cell Phone #: ( )

**If Interviewee is an Inmate or Parolee:**

Facility: _IL RIVER CC_    Housing Assignment: _SEG. #17_

Sentenced to _61_ on _2/4/00_ from _COOK_
Years Months    Date    County

for the offense(s) of: _AGGR. BATTERY OF A CHILD_

Claims affiliation with: _DENIES_ as _"PITO"_
STG    Nickname(s)

If on Parole or Electronic Detention, released from: _____ on _____
Facility    Date

and is supervised by _____
Agent or District Office

**Interview was conducted:**

by _ANITA EMRICH, INV._
Name and Title

at _IL RIVER CC_    on _3-11-02_ at _9:50_ ☒ a.m. ☐ p.m.
Location    Date    Time

Constitutional Rights were: read:    ☒ No    ☐ Yes at _____ ☐ a.m. ☐ p.m.

See Interviewee's statement on the next page.

Interview was concluded at: _11:00_    ☒ a.m. ☐ p.m.

_____    _Anita Emrich_
Signature of Interviewee    Signature of Interviewer

_____    _____
Name of Witness if any    Signature of Witness if any

_p1 of 4_    000052    Attachment: _22_

Investigational interview
(con't)

| | |
|---|---|
| Interviewee: _Gose) Darrla_ | Case Number: _02-EM0 753_ |

The Interviewee substantially stated:

Darrla stated that he went to E Moline) CC on 07-12-01 & moved into Dorm 6, Room 130. Inmate Victor Rafer moved into #130 the) same day & Inmate Joseph Turner was already there. Turner talked about his officer hurting an unnamed officer who brought him stuff, such as gum, blow pops, sunflowers. Darrla never knew who that officer was. Darrla stated that one day he asked Turner if they sold cigars in the commissary, Turner said just the mild Swizzle & suggested Darrla ask Jennings. Darrla then asked CO Jennings if it was possible to get Black & Mild cigars in. This was in August 2001. About 2 weeks later Jennings, who worked 3rd shift, called Darrla to the "bubble" of Dorm 6, and handed Darrla 2 boxes of Black & Mild cigars, 10 cigars total. Darrla stated that he smoked 1 of the Black & Milds, but they were too strong so he gave the remaing 9

| | | | |
|---|---|---|---|
| x _Gole D. Darrla_ | _Pamela Emmee_ | | Attachment: _2-2_ |
| Interviewee's Signature | Interviewer's Signature | Witness's Signature | |

U00053

Investigational Interview
(con't)

| Interviewee: Jose Davila | Case Number: 02-EMD-153 |
|---|---|

The Interviewee substantially stated:

to inmate Turner, who kept asking if Jennings ever brought him cigars. By the next day Turner came back w/ 4 packs of cigarettes (Newport & USA Gold). Davila gave the cigarettes to Jennings. That was what Jennings had wanted when he brought the first 2 boxes. 2 weeks later Jennings gave him 2, maybe 3 boxes Black & Milds, Davila gave them to Turner who sold them, gave him the cigarettes who & Davila gave the cigarettes to Jennings. Davila said this happened every 2 weeks through Aug & Sep. In Oct Jennings went on suspension & Turner went to Seg. Davila's movement between Jennings & Turner ended in Oct, 2001. Davila stated that he got nothing out of buy a go between except some sun flower seeds. Davila added that another inmate who was going home gave him a box

| Jose Davila | Anita Emmer | | Attachment: 12 |
|---|---|---|---|
| Interviewee's Signature | Interviewer's Signature | Witness's Signature | |