**E-FILED**
Thursday, 11 August, 2005  03:54:07 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MARK JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 03-4087 |
| | ) | |
| STATE OF ILLINOIS, by its | ) | |
| Departmental Unit, THE ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO MOTION TO STRIKE PLAINTIFF'S AFFIDAVITS

Plaintiff Mark Jennings, by his attorneys, Katz, Huntoon & Fieweger, P.C., respectfully submits the following Memorandum of Law in Support of his Response to Defendant State of Illinois' Motion to Strike Plaintiff's Affidavits:

### I.

### INTRODUCTION

Plaintiff resists defendant's Motion because all three affiants, Rick Lind, Steve Slocum, and Harry Hitchcock, were, in fact, disclosed in discovery, and defendant should not be heard to complain that every factual assertion contained in their affidavits was not explicitly disclosed in discovery when it chose not to take depositions of any witnesses (these three affiants, or any witnesses disclosed by plaintiff). As to defendant's request that certain paragraphs be stricken, defendant fails to demonstrate how these affiants do not have personal knowledge of these paragraphs. To the contrary, as the union representatives, these affiants have personal knowledge of the negotiations they personally conducted.

2

## II.

## APPLICABLE LAW

Plaintiff does not contest the "applicable law" section contained in paragraphs 7 through 10 of defendant's Motion, but would point out that defendant has entirely failed to illustrate to this court how any of this applicable law applies to any of the particular paragraphs of which it complains.

In supplementation to defendant's general proposition that affidavits must be based on personal knowledge see <u>Ladenberger</u> v. <u>General Signal Pump Group/Aurora Pump</u>, 2001 WL 586497 (N.D. IL May 31, 2001 at *1):

> "Under the law, personal knowledge may be inferred from the affidavit itself. <u>Barthelemy</u> v. <u>Airlines Pilots Ass'n</u>, 897 F.2d 999, 1018 (9th Cir. 1990). The extent to which an affiant had access to certain knowledge is determined by a variety of factors including the position of the affiant as well as the circumstances in which he or she was involved. <u>Id</u>."

Surveying the "positions of these affiants," Steve Slocum, as affirmed in paragraphs 2 through 3 of his Affidavit has been employed since 1984 at the East Moline Correctional Center, and was union president from January 1997 to December 2001 and again has been serving as Union President since January 2005; most pertinent to the facts in his Affidavit, Slocum "held a union representative lead steward position during the calendar years 2002 through 2005." (Slocum Aff. at ¶ 3.) Further, a fact ignored by defendant, is that Slocum affirmed under oath that the facts contained in his Affidavit were based upon his personal knowledge. (Slocum Affidavit, ¶ 1.)

3

As to Rick Lind, he, too, has been employed since 1984 and was a union representative "during the calendar years 1999 through 2002."  (Lind Aff. at ¶ 3.)  As recited in paragraph 5 of Lind's Affidavit:

> "As union officers, … Hitchcock, Slocum, McCubbin and I were all involved in negotiations in management at the East Moline Correctional Center concerning issues of discipline relating to Department of Correction employees who were members of our union."

Finally, as to Harry Hitchcock, he served as union representative during the calendar years 2001 and 2002.  (See Hitchcock Aff. at ¶ 2.)

As further summarized in Ladenberger, supra:

> "Under federal law, opinion evidence is allowed in an affidavit when it is the opinion that is at issue.  Jorman v. Veterans Administration, 579 F.Supp. 1407, 1412, fn 8 (N.D. Ill. 1984).  Further, affidavits are properly considered when based on personal knowledge and perceptions.  Harris Com Svenska v. Harris Corp., 3 F.3d 576, 581 (2nd Cir. 1993).  In this case, the above-mentioned statements are admissible because they attest to the witness' perception of Ladenberger's opinion and character.  Given that the credibility of Ladenberger's opinions and perceptions are at issue in this case, these statements are admissible and defendant's motion is denied with respect to those afore-mentioned statements."

## III.

## ARGUMENT

Defendant's first argument is that the Affidavits of Lind, Slocum and Hitchcock "should be stricken because they were not previously disclosed during discovery."  As defendant itself recites in paragraph 4 of its motion, however, Steve Slocum and Harry Hitchcock were disclosed in response to plaintiff's third interrogatory as providing testimony concerning "alleged disparate treatment of plaintiff compared to other similarly situated IDOC employees at East Moline Correctional Center and the alleged pretextual reason for plaintiff's termination."  As plaintiff has

4

now demonstrated in his response, the May 3, 2005 letter identified Rick Lind as having

knowledge "concerning the disparate treatment of Mark Jennings based on his union

representative position."  Under the circumstances, defendant's motion to strike must be denied

on the basis that these witnesses were not disclosed in discovery.

In support, see <u>Nance</u> v. <u>Friedman</u>, 2000 WL 1700156 (N.D. IL 2000 at *2):

> "The court denies plaintiff's motion to strike the affidavits on the grounds that the
> witnesses were not disclosed in discovery.  Friedman has provided the court with a letter
> from his counsel to plaintiff's counsel dated December 23, 1999 identifying McNulty and
> Robert Penland, a representative of Associates, as witnesses and describing how they
> would testify."

Under this authority, plaintiff's disclosure of Rick Lind (in addition to Craig Hart) by his

counsel's May 3, 2005 letters is sufficient.

See also <u>Blum</u> v. <u>Lawent</u>, 2003 WL 22078306 (N.D. IL 2003) at *1):

> "Plaintiff seeks to strike 12 of the 27 factual assertions made by defendant,
> arguing that the affidavits that support those assertions were not disclosed during
> discovery. … In this case, plaintiff does not allege the names of the affiants were
> withheld or that she was surprised that Que and Lawent had relevant information
> regarding this lawsuit.  The court is unwilling to strike evidence provided by defendant
> himself on the dentist who treated the plaintiff and her children where there is no
> plausible claim of surprise.  Plaintiff's request to strike these allegations is denied."

Here, defendant cannot plausibly claim surprise when Slocum, Lind and Hitchcock were

all disclosed in discovery and there can be no claim of surprise that these witnesses had relevant

information regarding this lawsuit such as that contained in the Affidavits.

## A.  <u>Rick Lind</u>

In the alternative, defendant moves to strike certain paragraphs from those Affidavits.

Starting with the Lind Affidavit, defendant first moves to strike paragraph 7 which recites that

the employee review officer, Terry Boerema, "recommended that Mr. Koster only receive a five

5

day suspension for all of these offenses."  Contrary to defendant's claim that this is "immaterial," it is clearly material that this Caucasian correctional officer received a lesser suspension for an arguably more serious offense.  This evidence goes directly towards plaintiff's proof of a *prima facie* case of disparate treatment and also pretext, since Mr. Boerema was the same hearing review officer who recommended that Mark Jennings be fired.  (See Defendant's Summary Judgment Exhibit 1.)

Defendant next moves to strike paragraph 8 as "immaterial, not based on personal knowledge."  It is hard to understand how defendant can claim paragraph 8 is not based on personal knowledge when it specifically states "I, as a member of the union team, filed a grievance at Mr. Koster's dismissal before arbitration and negotiated the settlement with management … whereby management agreed to return Mr. Koster to work and reduce the discipline to a five day suspension."  How much more "personal" must the knowledge be?  Mr. Lind personally filed the grievance and participated in negotiating the settlement!  Reiterating the statement from Ladenberger, supra, the extent to which an affiant had access to certain knowledge is determined "by a variety of factors including the position of the affiant as well as the circumstances in which he or she was involved."  Obviously, Lind's position as the union representative and the fact that he was personally involved in the negotiations about which he states that Koster was returned to work with reduced discipline shows that the "circumstances in which he was involved" not only allows but must necessarily lead to the inference that he has personal knowledge of these facts.

The rest of the complaints regarding Lind's Affidavit are essentially the same.  In paragraph 9, Lind affirms that the decision to return Koster was approved by the director, Don

6

Snyder.  In paragraph 11, Lind recites that he was part of the team which filed a grievance over Mr. Huskey's termination and negotiated with management on behalf of him.  Once again, the "circumstances" in which Lind was involved must allow the inference that he has personal knowledge of the facts regarding Huskey's suspension and reinstatement -- he personally negotiated for that reduced discipline.  Moreover, the attached documents showing Director Snyder's signature approving the reinstatement and reduced discipline for Huskey further corroborates the facts set forth in paragraph 9.  (See Exhibit F attached to Lind Affidavit, which was appended as Exhibit C to plaintiff's Response to Summary Judgment.)

Similarly, in paragraph 14, Mr. Lind discusses his knowledge regarding Belinda Rursch and in paragraph 15 his knowledge regarding another correctional officer, John Krup.  Lind's knowledge of Krup is explained in paragraph 5 of his Affidavit:

> "He was involved in negotiations concerning issues of discipline relating to all DOC employees who were members of their union."[1]

As to paragraph 16, contrary to defendant's assertion that Correctional Officer Hart was not disclosed through discovery, counsel's May 3, 2005 letter specifically identified Hart and his "knowledge concerning his misconduct of bringing whiskey into the premises and providing it to inmates."  Once again, Lind would have personal knowledge of Hart's disciplinary hearing, and once again the point was that he raised this comparator with management during the negotiations regarding plaintiff.

---

[1]/ In addition, defendant seems to have missed the point of paragraph 15.  The point of that paragraph was that during the negotiations "to convince management that Mr. Jennings should not be terminated and should be given a last chance agreement … we pointed out the fact that John Krup, a Caucasian correctional officer, had also been accused by inmate John Turner (the same inmate who accused Mark Jennings of misconduct) of engaging in the same misconduct … ."  The point, therefore, was that the very fact that a Caucasian was treated differently and more favorably was pointed out to management.

7

As to paragraph 17, Lind affirms that he heard from Chief of Security Steve Wright making derogatory statements about Hispanic Americans. This is certainly not "immaterial," and is not "hearsay" as it is a statement by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2). Finally, contrary to defendant's assertion that this was "not disclosed through discovery," it is plaintiff's position that Rick Lind was, in fact, disclosed as a witness, but defendant simply chose not to depose this or any other witness.

## B. <u>Steve Slocum</u>.

Defendant's complaints regarding Steve Slocum are virtually identical. Admittedly, the Affidavit of Slocum is very similar to that of Lind. The same arguments apply regarding paragraphs 7, 8, 9, 11, 12, 14 and 15. In summary, Slocum, in addition to Lind, personally filed the grievance as to Mark Koster and therefore would have personal knowledge of the entire grievance procedure and the results (regarding paragraph 8). As to paragraph 11 regarding the Huskey termination and return to work negotiation, Slocum again had personal knowledge as part of the team that filed that grievance and negotiated the return to work. As to paragraph 12, it must at least be inferred from paragraph 5 of Slocum's Affidavit that he would have knowledge regarding Belinda Rursch's union disciplinary proceeding. As to paragraph 14, by definition this affiant would have knowledge, as indicated by his use of the personal pronoun "I" that:

> "I, as part of the union negotiation team, sought to have management enter into a last chance agreement (for Jennings) similar to that of Mr. Huskey and/or Koster."

Slocum would have personal knowledge of the facts concerning that request for a last chance agreement for plaintiff, including the statements he personally made to Warden Wyant and Major Wright, as well as the statements Wyant and Wright made back to him. Finally, as to paragraph 15, like Lind, Slocum would have personal knowledge that he pointed out that the

8

treatment of Jennings was not the same as that of John Krup, and again by definition would have personal knowledge that he pointed that fact out to management.

### C. **Harry Hitchcock**.

Defendant complains regarding paragraphs 4, 5 and 6 of Harry Hitchcock's Affidavit. For the court's convenience, paragraph 4 provides:

> "That in late 2001 or early 2002, Mark Jennings, after completing work on third shift, approached me to make a complaint about the Chief of Security, Major Steven Wright.  Mr. Jennings had informed me that Major Wright had confronted him during his work shift and had called Mr. Jennings a 'lazy Mexican.'  I asked Mr. Jennings if he wanted to pursue grievance charges against Mr. Wright, but Mr. Jennings informed me that he did not because he did not want to create problems for himself."

Obviously, this statement is not hearsay, as it is not "offered in evidence to prove the truth of the matter asserted."  (Rule 801(c).)  Indeed, Mr. Jennings himself has affirmed that Major Wright called him a "lazy Mexican," and it is not for the truth of that proposition that paragraph 4 is aimed, but the mere fact that Jennings reported that allegation to him in late 2001 or early 2002, a fact about which Hitchcock would have personal knowledge.  This fact is material since in February 2002, Steve Wright, as Chief of Security, spearheaded the investigation into the activities of Mr. Jennings and ignored allegations against other Caucasian correctional officers.

As to paragraph 5, that paragraph merely recites that plaintiff informed Hitchcock of the fact that he had requested additional education and training but was turned down and that Jennings requested that Hitchcock, as union representative, inquire as to why he was not receiving the training.  This fact is material as additional circumstantial evidence of Wright's bias against Hispanics such as Mr. Jennings.

9

Finally, as to paragraph 6, Hitchcock merely affirms that he discussed this issue with Major Wright, and the reported comments of Wright are clearly hearsay exceptions as statements/admissions by party opponent under Rule of Evidence 801(d)(2).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully asks that the court deny defendant's Motion to Strike the Affidavits of Rick Lind, Steve Slocum and Harry Hitchcock in their entirety, and further deny defendant's request to strike the above-referenced paragraphs from those affidavits.

Respectfully submitted,

MARK JENNINGS, Plaintiff

By: /s/Stephen T. Fieweger

KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
P.O. Box 950
Moline, IL 61266-0950
Telephone:  309-797-3000
Fax:  309-797-3330
sfieweger@katzlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2005, I electronically filed this MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO MOTION TO STRIKE PLAINTIFF'S AFFIDAVITS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Lisa Madigan, Attorney General and
William E. Jarvis, Assistant Attorney General
500 South Second Street
Springfield, IL  62706

/s/  Stephen T. Fieweger

s:\wp\worddoc\11065001.17M