| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Mark W. Jennings v. Illinois Department of* |
| | ) SS | *Corrections,* USDC-CD Ill. No. 03-4087 |
| COUNTY OF SANGAMON | ) | |

## AFFIDAVIT

I, Denise Connelly, under oath, state that I have personal knowledge of the statements contained in this Affidavit, that I am competent to testify, and that if called to testify, I would testify to the same as follows:

1.      I am employed by the Illinois Department of Central Management Services as a Public Service Administrator (Labor Relations Administrator). I have been employed in that capacity since May 16, 1998. I have never been an employee of the Illinois Department of Corrections.

2.      As Labor Relations Administrator my duties include: Supervising three Labor Relations Liaisons; conducting pre-arbitration (fourth level) meetings with AFSCME and either resolving the grievances or advancing the grievance to the arbitration level, conducting the first review of Discharges, Suspension Pending Discharge or Suspension Pending Judicial Verdict for Agency's of assignment; reviewing, processing, and approving layoff packages from a labor relations standpoint on all layoffs covered by any collective bargaining agreement for agencies under the jurisdiction of the Governor; Negotiating salary grade placement for classification covered under a collective bargaining agreement for Agencies under the Jurisdiction of the Governor; Training supervisory staff in the proper application of the various collective bargaining agreements; Provide advice and guidance to agencies in regard to various labor issues.

3.      In July 2000 Plaintiff's labor union (AFSCME) and the State of Illinois entered into a four-year collective bargaining agreement. (Attached hereto as Exhibit 1 are select provisions from that agreement.)

4.      This agreement contained various provisions relating to management rights; recognition of AFSCME as the exclusive bargaining representative; grievance procedures; work rules; and hours of work and overtime. (Exhibit 1).

5. Article V of the Master contract sets forth the grievance process under the contract. (Attached hereto as Exhibit 2.) A grievance is defined as any difference, complaint or dispute between the employer and the Union or any employee regarding the application, meaning or interpretation of the agreement. (See Article V, Section 1.)

6. In the usual case, grievances are handled in the following manner:

A. **Step 1**: The employee and/or union orally raises the grievance with the employer's supervisor who is outside the bargaining unit. The immediate supervisor is then required to render an oral response within five working days of when the grievance is presented. If the oral grievance is not resolved at Step 1, the grievance proceeds to step 2. (Section 2).

B. **Step 2**: In the event the grievance cannot be resolved in Step 1, it shall be presented in writing by the Union to the Intermediate Administrator. The Intermediate Supervisor is then required to meet with the Union and attempt to resolve that grievance. (Section 2).

C. **Step 3**: If the grievance is still unresolved, it is to be presented by the Union to the agency head. (Section 2).

D. **Step 4**: If the matter is not resolved at Step 3, the Union, by written notice to the employer may appeal the grievance to a pre-arbitration staff meeting. (Section 2).

7. Cases involving discharge, however, are handled slightly differently. All grievances relating to employee discharges are automatically advanced to the third level (Agency Head). If an agreement is not reached at the third level, the grievance proceeds to the fourth level for a pre-arbitration staff meeting. If the grievance is not resolved at the pre-arbitration level, the matter is set for binding arbitration. (See Article V, Section 4).

8. In October 2002, Plaintiff was discharged by East Moline Correctional Center for bringing cigars into EMCC and trading them with state prisoners for cigarettes, athletic shoes, boots, a beard trimmer, and other goods from the prison commissary in violation of various

departmental rules. (Attached hereto as Exhibit 3 is a true and accurate copy of the written charges proferred against Plaintiff.)

9. I was also one of the individuals from CMS who was responsible for approving Plaintiff's discharge. I did not consult with anyone from the Department of Corrections prior to making my decision. My decision was based solely on the materials furnished to me by the Department of Corrections. The materials that I reviewed included: a statement of charges; most recent performance evaluation prepared for Plaintiff; and the investigative case file in Case No. 02 EMO 153.

10. Following that discharge, Plaintiff's union, the American Federation of State, County and Municipal Employees (AFSCME) filed a grievance on his behalf. (Attached hereto as Exhibit 4 is a copy of that grievance.)

11. Pursuant to the terms of the collective bargaining agreement, Plaintiff's grievance was automatically advanced to the third level (agency head).

12. I was the individual assigned by CMS to respond to the fourth level grievances (CMS). (See Exhibit 4.)

13. On February 10, 2003, the parties agreed to submit Plaintiff's case for binding arbitration (Exhibit 4). I signed that resolution on behalf of the State of Illinois.

14. Prior the pre-arbitration meeting, I did not communicate with either Warden Wyant, Major Wright, or the Union concerning Plaintiff's arbitration. In addition, at no time did I ever discuss with either Warden Wyant or Major Wright the possibility of offering Plaintiff a "last chance agreement."

15. I decided not to extend an offer of settlement to Plaintiff (or his Union) because I believed that the evidence provided by the Department of Corrections was more than sufficient to support a charge of trading and trafficking with inmates.

**FURTHER AFFIANT SAYETH NOT.**

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

Denise Connelly

Subscribed and sworn to before me this 3 1 day of January, 2006.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

OFFICIAL SEAL
**GAIL REXROAD**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2-10-2006

# AGREEMENT



between

# AFSCME

American Federation of State,
County and Municipal Employees
Council 31, AFL-CIO

and

# STATE OF ILLINOIS

Department of
Central Management Services

July 1, 2000—June 30, 2004

| RC-06-OCB | RC-09-OCB | RC-10-OCB | RC-14-OCB |
| RC-28-OCB | RC-42-OCB | RC-62-OCB | RC-63-OCB |

EXHIBIT 1

# AGREEMENT

For RC-06-OCB
RC-09-OCB
RC-10-OCB
RC-14-OCB
RC-28-OCB
RC-42-OCB
RC-62-OCB
RC-63-OCB

## BETWEEN



## STATE OF ILLINOIS

Department of Central Management Services

### AND

## AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 31 (AFSCME), AFL-CIO



July 1, 2000 to June 30, 2004

Printed by Authority of the State of Illinois
(3152228—70M—5/01)

# TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| | PREAMBLE | 1 |
| | AGREEMENT | 1 |
| | DEFINITION OF TERMS | 1 |
| I | RECOGNITION | 2 |
| | Section 1 Recognition | 2 |
| | Section 2 Abolition or Merger of Job Classification | 2 |
| | Section 3 Integrity of the Bargaining Unit | 2 |
| | Section 4 Union Exclusivity | 3 |
| II | MANAGEMENT RIGHTS | 3 |
| | Section 1 Rights Residing in Management | 3 |
| | Section 2 Statutory Obligations | 3 |
| III | NON-DISCRIMINATION | 4 |
| | Section 1 Prohibition Against Discrimination | 4 |
| | Section 2 Union Activity | 4 |
| | Section 3 Membership Solicitation | 4 |
| | Section 4 Equal Employment/ Affirmative Action/ADA | 4 |
| | Section 5 Availability of Cards | 4 |
| IV | CHECKOFF/FAIR SHARE | 4 |
| | Section 1 Deductions | 5 |
| | Section 2 Revocation | 5 |
| | Section 3 Fair Share | 5 |
| | Section 4 Indemnification | 5 |
| | Section 5 Memorandum of Understanding | 5 |
| V | GRIEVANCE PROCEDURE | 5 |
| | Section 1 Grievance | 6 |
| | Section 2 Grievance Steps | 6 |
| | Section 3 Time Limits | 6 |
| | Section 4 Special Grievances/ Jurisdictions | 6 |
| | Section 5 Number of Representatives and Telephone Use | 10 |
| | Section 6 Time Off, Meeting Space and Representatives | 10 |
| | Section 7 Advanced Grievance Step Filing | 10 |
| | Section 8 Pertinent Witnesses and Information | 11 |
| | Section 9 Stewards and Union Representatives | 11 |
| VI | UNION RIGHTS | 12 |
| | Section 1 Union Activity During Working Hours | 12 |
| | Section 2 Access to State Premises by Union Representatives | 12 |
| | Section 3 Time Off for Union Activities | 12 |
| | Section 4 Union Bulletin Boards | 12 |
| | Section 5 Information Provided to Union | 13 |

[iii]