E-FILED
Monday, 06 February, 2006  04:27:39 PM
Clerk, U.S. District Court, ILCD

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | *Mark W. Jennings v. Illinois Department of* |
| | ) SS. | *Corrections,* USDC-CD Ill. No. 03-4087 |
| COUNTY OF SANGAMON | ) | |

## AFFIDAVIT

I, Todd Creviston, under oath, state that I have personal knowledge of the statements contained in this Affidavit, that I am competent to testify and that if called to testify, I would testify to the same as follows:

1. I am employed by the Illinois Department of Corrections as a Public Service Administrator (Labor Relations Administrator). I have been employed in that capacity since 1996.

2. As Labor Relations Administrator my duties include conducting third level grievance hearings on behalf of IDOC management.

3. In July 2000, Plaintiff's labor union (AFSCME) and the State of Illinois entered into a four-year collective bargaining agreement. (Attached hereto as Exhibit 1 are select provisions from that agreement.)

4. This agreement contained various provisions relating to management rights; recognition of AFSCME as the exclusive bargaining representative; grievance procedures; work rules; and hours of work and overtime. (Exhibit 1).

5. Article V of the Master contract sets forth the grievance process under the contract. (Attached hereto as Exhibit 2). A grievance is defined as any difference, complaint or dispute between the employer and the Union or any employee regarding the application, meaning or interpretation of the agreement. (See Article V, Section 1).

6. In the usual case, grievances are handled in the following manner:

A. **Step 1**: The employee and/or union orally raises the grievance with the employer's supervisor who is outside the bargaining unit. The immediate supervisor is then required to render an oral response within five working days of when the grievance is presented. If the oral grievance is not resolved at Step 1, the grievance proceeds to step 2.

(Section 2).

B.  **Step 2:** In the event the grievance cannot be resolved in Step 1, it shall be presented in writing by the Union to the Intermediate Administrator. The Intermediate Supervisor is then required to meet with the Union to attempt to resolve that grievance. (Section 2).

C.  **Step 3:** If the grievance is still unresolved, it is to be presented by the Union to the agency head. (Section 2).

D.  **Step 4:** If the matter is not resolved at Step 3, the Union, by written notice to the employer, may appeal the grievance to a pre-arbitration staff meeting. (Section 2).

7.  Cases involving discharge, however, are handled slightly different. All grievances relating to employee discharges are automatically advanced to the third level (Agency Head). I have been designated by IDOC management as the individual responsible for hearing third level grievances.

8.  If an agreement is not reached at the third level, the grievance proceeds to the fourth level for a pre-arbitration staff meeting. That pre-arbitration meeting is attended by representatives from AFSCME and the Illinois Department of Central Management Services. Ordinarily, officials from IDOC do not attend those meetings.

9.  If the grievance is not resolved at the pre-arbitration level, the matter is set for binding arbitration. (See Article V, Section 4).

10. That arbitration is handled by officials from the Illinois Department of Central Management Services. The person assigned the case from CMS Labor Relations ultimately decides whether the case is settled or proceeds to arbitration.

11. In October 2002, Plaintiff was discharged by East Moline Correctional Center for bringing cigars into EMCC and trading them with state prisoners for cigarettes, athletic shoes, boots, a beard trimmer, and other goods from the prison commissary in violation of various

departmental rules. (Attached hereto as Exhibit 3 is a true and accurate copy of the written charges proffered against Plaintiff.)

12. Following that discharge, Plaintiff's union, the American Federation of State, County and Municipal Employees (AFSCME), filed a grievance on his behalf. (Attached hereto as Exhibit 4 is a copy of that grievance.)

13. Pursuant to the terms of the Collective Bargaining Agreement, Plaintiff's grievance was automatically advanced to the third level (Agency head).

14. I was the individual from IDOC assigned to conduct a hearing as Plaintiff's third level grievance. (See Exhibit 4).

15. On November 25, 2002, a third level grievance hearing was held concerning Plaintiff's discharge. After reviewing the complete investigative file, I determined that there was more than sufficient evidence to substantiate the charges against Plaintiff. (Attached hereto as Exhibit 5 is a true and accurate copy of the report from the third level grievance.)

16. Accordingly, I made a recommendation that Plaintiff's third level grievance be denied. In making that determination, I considered the following information contained in the investigative file:

a. Inmate Turner had provided substantial information regarding the grievant's involvement in trading and trafficking contraband with himself and other numerous inmates;

b. The stories of each inmate were verified and found to be truthful when they submitted to polygraph tests;

c. The information provided by the inmates corresponded to the record of dorm assignments for the grievant; and

d. The information provided by the inmates also corresponded to the contraband items seized from some of them (sunflower seeds, chewing gum, black and mild cigars, cigarettes, shaving cream, Skoal, red crushed pepper, cologne, boots, and a watch).

17. On February 10, 2003, the parties (AFSCME and the State of Illinois) agreed to submit Plaintiff's case for binding arbitration. (Exhibit 6). CMS employee Denise Connelly signed that resolution on behalf of the State of Illinois.

18. The matter was assigned to CMS attorney Greg Newton.

19. A hearing was held before Arbitrator Edwin Benn on June 12, 2003. (Exhibit 6).

20. On June 29, 2003, Arbitrator Benn issued an opinion and award in connection with Plaintiff's arbitration. (Exhibit 6). Arbitrator Benn determined that the allegations levied against Plaintiff were credibly supported by the testimony of the witnesses and that discharge was appropriate given the severity of the offense and Plaintiff's disciplinary record. (Exhibit 6).

21. I did not, at any time, communicate with Warden Wyant, Major Wright, Denise Connelly, or Greg Newton, concerning the issue of offering Plaintiff a last chance agreement.

**FURTHER AFFIANT SAYETH NOT.**

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

Todd Creviston

Subscribed and sworn to before me this 6 day of February, 2006.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

LISA L. WEITEKAMP
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-14-2009

# AGREEMENT



between

## AFSCME

American Federation of State,
County and Municipal Employees
Council 31, AFL-CIO

and

## STATE OF ILLINOIS

Department of
Central Management Services

July 1, 2000—June 30, 2004

| RC-06-OCB | RC-09-OCB | RC-10-OCB | RC-14-OCB |
| RC-28-OCB | RC-42-OCB | RC-62-OCB | RC-63-OCB |

EXHIBIT

1

# AGREEMENT

For RC-06-OCB
RC-09-OCB
RC-10-OCB
RC-14-OCB
RC-28-OCB
RC-42-OCB
RC-62-OCB
RC-63-OCB

## BETWEEN



## STATE OF ILLINOIS

Department of Central
Management Services

AND

## AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 31 (AFSCME), AFL-CIO



July 1, 2000 to June 30, 2004

Printed by Authority of the State of Illinois
(3152228—70M—5/01)

# TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| | PREAMBLE | 1 |
| | AGREEMENT | 1 |
| | DEFINITION OF TERMS | 1 |
| I | RECOGNITION | 2 |
| | Section 1 Recognition | 2 |
| | Section 2 Abolition or Merger of Job Classification | 2 |
| | Section 3 Integrity of the Bargaining Unit | 2 |
| | Section 4 Union Exclusivity | 3 |
| II | MANAGEMENT RIGHTS | 3 |
| | Section 1 Rights Residing in Management | 3 |
| | Section 2 Statutory Obligations | 3 |
| III | NON-DISCRIMINATION | 4 |
| | Section 1 Prohibition Against Discrimination | 4 |
| | Section 2 Union Activity | 4 |
| | Section 3 Membership Solicitation | 4 |
| | Section 4 Equal Employment/ Affirmative Action/ADA | 4 |
| IV | CHECKOFF/FAIR SHARE | 4 |
| | Section 1 Deductions | 4 |
| | Section 2 Revocation | 5 |
| | Section 3 Fair Share | 5 |
| | Section 4 Indemnification | 5 |
| | Section 5 Availability of Cards | 5 |
| V | GRIEVANCE PROCEDURE | 5 |
| | Section 1 Grievance | 6 |
| | Section 2 Grievance Steps | 6 |
| | Section 3 Time Limits | 6 |
| | Section 4 Special Grievances/ Memorandum of Understanding | 10 |
| | Section 5 Number of Representatives and Jurisdictions | 10 |
| | Section 6 Time Off, Meeting Space and Telephone Use | 10 |
| | Section 7 Advanced Grievance Step Filing | 11 |
| | Section 8 Pertinent Witnesses and Information | 11 |
| | Section 9 Stewards and Union Representatives | 11 |
| VI | UNION RIGHTS | 12 |
| | Section 1 Union Activity During Working Hours | 12 |
| | Section 2 Access to State Premises by Union Representatives | 12 |
| | Section 3 Time Off for Union Activities | 12 |
| | Section 4 Union Bulletin Boards | 12 |
| | Section 5 Information Provided to Union | 13 |

[iii]