**E-FILED**
Monday, 06 February, 2006  04:31:28 PM
Clerk, U.S. District Court, ILCD

STATE OF ILLINOIS               )               *Mark W. Jennings v. Illinois Department*
                                ) SS            *Corrections,*  USDC-CD Ill. No. 03-4087
COUNTY OF SANGAMON              )

## AFFIDAVIT

I, Gregory P. Newton, under oath, state that I have personal knowledge of the statements contained in this Affidavit, that I am competent to testify and that if called to testify, I would testify to the same as follows:

1.      I am employed by the Illinois Department of Central Management Services as the Supervising Attorney in the Labor Relations Division and have been so employed for the last seven years.  I have been employed by the State of Illinois as a labor relations attorney since 1992.

2.      As Supervising Attorney, my duties include representing the State of Illinois and its agencies in labor arbitrations, in the negotiation of collective bargaining agreements, and before the State Labor Relations Board.  I also supervise other labor relations attorneys, advise state agencies on labor issues, and schedule and participate in arbitration hearings with the various unions that represent state employees.

3.      My duties as a labor relations attorney include, but are not limited to litigating arbitration cases  between the American Federation of State, County and Municipal Employees (AFSCME) and the State of Illinois.

4.      Those arbitration cases frequently involve questions of whether the State of Illinois or AFSCME is in compliance with the Collective Bargaining Agreement.

5.      In April 2000, Plaintiff's labor union (AFSCME) and the State of Illinois entered into a four-year collective bargaining agreement. (Attached hereto as Exhibit 1 are select provisions from that agreement.)  That agreement went into effect in July 2000.

6.      This agreement contained various provisions relating to management rights; recognition of AFSCME as the exclusive bargaining representative; grievance procedures; work rules; and hours of work and overtime. (Exhibit 1).

7.    Article V of the master contract sets forth the grievance process under the contract.    (Attached hereto as Exhibit 2.)  A grievance is defined as any difference, complaint or dispute between the employer and the Union or any employee regarding the application, meaning or interpretation of the agreement.  (See Article V , Section 1.)

8.    In the usual case, grievances are handled in the following manner:

A.    **Step 1**: The employee and/or union orally raises the grievance with the employer's supervisor who is outside the bargaining unit.  The immediate supervisor is then required to render an oral response within five working days of when the grievance is presented. If the oral grievance is not resolved at Step 1, the grievance proceeds to step 2. (Section 2).

B.    **Step 2**: In the event the grievance cannot be resolved in Step 1, it shall be presented in writing by the Union to the Intermediate Adminitratrator. The Intermediate Supervisor is then required to meet with the Union and attempt to resolve that grievance. (Section 2).

C.    **Step 3**: If the grievance is still unresolved, it is to be presented by the Union to the agency head.  (Section 2).

D.    **Step 4**: If the matter is not resolved at Step 3, the Union, by written notice to the employer may appeal the grievance to a pre-arbitration staff meeting.  (Section 2).

9.    Cases involving discharge however are handled slightly differently.    All grievances relating to employee discharges are automatically advanced to the third level (Agency Head).  If an agreement is not reached at the third level, the grievance proceeds to the fourth level for a pre- arbitration staff meeting.  If the grievance is not resolved at the pre-arbitration level the matter is set for binding arbitration.  (See Article V, Section 4.)

10.    In October 2002, Plaintiff was discharged by East Moline Correctional Center for bringing cigars into EMCC and trading them with state prisoners for cigarettes, athletic shoes, boots, a beard trimmer, and other goods from the prison commissary in violation of various

departmental rules.  (Attached hereto as Exhibit 3 is a true and accurate copy of the written charges proferred against Plaintiff.)

11.    Plaintiff's union, the American Federation of State, County and Municipal Employees (AFSCME) filed a grievance on his behalf.  (Attached hereto as Exhibit 4 is a copy of that grievance.)

12.    Pursuant to the terms of the collective bargaining agreement, Plaintiff's grievance was automatically advanced to the third level (agency head).

13.    IDOC Labor Relations Administrator, Todd Creviston, denied Plaintiff's grievance at the third level.

14.    The fourth level grievance was handled by Denise Connelly, an employee of the Illinois Department of Central Management Services (CMS).  (See Exhibit 4.)  Ms. Connelly is not, and has never been, an employee of the Illinois Department of Corrections.

15.    On February 10, 2003, the parties agreed to submit Plaintiff's case for binding arbitration.  (Exhibit 5).  Ms. Connelly signed that resolution on behalf of the State of Illinois.  Ms. Connelly was also the individual from CMS who was responsible for initially approving Plaintiff's suspension pending discharge.

16.    Sometime in early February 2003, I was assigned to represent the Department of Corrections in an arbitration between the Illinois Department of Central Management Services and AFSCME.  (Attached hereto as Exhibit 6 is a true and accurate copy of the Arbitrators Opinion and Award in case number 4405-6-0001-03.)  That arbitration involved the question of whether the State had just cause to discharge Plaintiff.

17.    A hearing was held before Arbitrator Edwin H. Benn on June 12, 2003 (Exhibit 5).

18.    During that hearing, the State provided testimony from inmates Jose Davilla, John Turner, and Steve Mantulla. (Exhibit 4).  Plaintiff testified on his own behalf. (Exhibit 5).

Neither Steve Wright nor Gary Wyant testified on behalf of management.

19.     On June 29, 2003, Arbitrator Benn issued his Opinion and Award in connection with Plaintiff's arbitration.  (Exhibit 5).  Arbitrator Benn determined that the allegations levied against Plaintiff were credibly supported by the testimony of aforemtioned three inmates and that discharge was appropriate given the severity of the offense.

20.     Prior the arbitration hearing on June 12, 2003, I did not communicate with Warden Wyant concerning Plaintiff's arbitration.  In addition, at no time did I ever discuss with either Warden Wyant or Major Wright the possibility of offerring Plaintiff a "last chance agreement."

21.     After reviewing the investigative file, and interviewing various inmate witnesses, I determined that there was more than sufficient evidence to support a charge of trading and trafficking with inmates.   Accordingly, I did not recommend the State settle Plaintiff's grievance prior to arbitration.

**FURTHER AFFIANT SAYETH NOT**

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

Gregory P. Newton

Subscribed and sworn to before me this 31st day of January, 2006.

Signature redacted pursuant to
USDC-CDIL Adm.Proc. Rule II(I)(1)(f)

OFFICIAL SEAL
GAIL REXROAD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2-10-2006



# AGREEMENT



between

# AFSCME

American Federation of State,
County and Municipal Employees
Council 31, AFL-CIO

and

# STATE OF ILLINOIS

Department of
Central Management Services

July 1, 2000—June 30, 2004

| | | | |
|---|---|---|---|
| RC-06-OCB | RC-09-OCB | RC-10-OCB | RC-14-OCB |
| RC-28-OCB | RC-42-OCB | RC-62-OCB | RC-63-OCB |

EXHIBIT

1

# AGREEMENT

For RC-06-OCB
RC-09-OCB
RC-10-OCB
RC-14-OCB
RC-28-OCB
RC-42-OCB
RC-62-OCB
RC-63-OCB

## BETWEEN

## STATE OF ILLINOIS



Department of Central
Management Services

AND

## AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES COUNCIL 31 (AFSCME), AFL-CIO



July 1, 2000 to June 30, 2004

Printed by Authority of the State of Illinois
(3152228—70M—5/01)

# TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| | PREAMBLE | 1 |
| | AGREEMENT | 1 |
| | DEFINITION OF TERMS | 1 |
| I | RECOGNITION | 2 |
| | Section 1 Recognition | 2 |
| | Section 2 Abolition or Merger of Job Classification | 2 |
| | Section 3 Integrity of the Bargaining Unit | 3 |
| | Section 4 Union Exclusivity | 3 |
| II | MANAGEMENT RIGHTS | 3 |
| | Section 1 Rights Residing in Management | 3 |
| | Section 2 Statutory Obligations | 4 |
| III | NON-DISCRIMINATION | 4 |
| | Section 1 Prohibition Against Discrimination | 4 |
| | Section 2 Union Activity | 4 |
| | Section 3 Membership Solicitation | 4 |
| | Section 4 Equal Employment/ | |
| | Affirmative Action/ADA | 4 |
| IV | CHECKOFF/FAIR SHARE | 4 |
| | Section 1 Deductions | 4 |
| | Section 2 Revocation | 5 |
| | Section 3 Fair Share | 5 |
| | Section 4 Indemnification | 5 |
| | Section 5 Availability of Cards | 5 |
| V | GRIEVANCE PROCEDURE | 5 |
| | Section 1 Grievance | 5 |
| | Section 2 Grievance Steps | 6 |
| | Section 3 Time Limits | 6 |
| | Section 4 Special Grievances/ | |
| | Memorandum of Understanding | 10 |
| | Section 5 Number of Representatives and | |
| | Jurisdictions | 10 |
| | Section 6 Time Off, Meeting Space and | |
| | Telephone Use | 10 |
| | Section 7 Advanced Grievance Step Filing | 10 |
| | Section 8 Pertinent Witnesses and Information | 11 |
| | Section 9 Stewards and Union | |
| | Representatives | 11 |
| VI | UNION RIGHTS | 11 |
| | Section 1 Union Activity During Working Hours | 12 |
| | Section 2 Access to State Premises by | |
| | Union Representatives | 12 |
| | Section 3 Time Off for Union Activities | 12 |
| | Section 4 Union Bulletin Boards | 12 |
| | Section 5 Information Provided to Union | 13 |

[iii]