**E-FILED**
Monday, 06 February, 2006  04:36:52 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MARK JENNINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 03-4087 |
| | ) |
| STATE OF ILLINOIS, by its | ) |
| Departmental Unit, THE ILLINOIS | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RESISTANCE TO SUMMARY JUDGMENT MOTION

Now comes plaintiff, Mark Jennings, by and through his attorneys, Katz, Huntoon, & Fieweger, P.C., and hereby states in support of his Resistance to the defendant's Motion for Summary Judgment as follows:

Plaintiff has been requested by the court to brief the issues as to the decision as to whether or not the decision not to offer a last chance agreement was made by the Illinois Department of Central Management Services and what input did Major Wright or Warden Wyant had in making that decision.

First, plaintiff sets forth in support of his position additional Affidavits of Rick Lind and Harry Hitchcock, two union members who have had extensive dealings with disciplinary issues for union members at the Illinois Department of Corrections at the East Moline Correctional Facility.  Lind's Affidavit is attached as Exhibit A and Hitchcock's as Exhibit B.

2

As can be observed from the Supplemental Affidavits and the prior Affidavits of Steve Slocum and Rick Lind in the resistance of summary judgment motion and as shown in the supporting documentation, it was Warden Wyant and Major Steve Wright who were the decision makers to terminate Mark Jennings as a correctional officer for the offenses of trading and trafficking and socializing with inmates.  It is further clarified in the Supplemental Affidavits of Lind and Hitchcock, after Wyant made the decision to terminate Mark Jennings, that in September 2002, the union representatives asked Wright and Wyant to give Mark Jennings the same treatment or deal that had been given to two Caucasian correctional officers, Robert Huskey and Mark Koster, namely a reduction to a suspension, rather than termination for these offenses.  Warden Wyant replied that there was no way that he was going to give Mark Jennings any less discipline than a termination.

The Department of Corrections will argue that the decision to not offer Mr. Jennings reduced discipline was not made by the Department of Correction's managerial employees, but rather that at the fourth level grievance proceedings between Central Management Services and AFSCGE union negotiations prior to Mr. Jennings' case proceeding to arbitration.  While it is true that such negotiations occurred between Central Management Services employees and union representatives, any agreement reached by CMS and the union to reduce a proposed discipline must be approved by the warden at the Illinois Department of Corrections facility before the deal can be done.  As

3

pointed out with respect to Huskey and Koster, it was Warden Wyant who was the approving warden of the decision to reduce the discipline of each of these Caucasian officers. As shown by the evidence submitted by the plaintiff, if a warden will not approve a reduction in discipline negotiated between labor and management prior to the case being submitted to arbitration, discipline will not be reduced. As specifically stated to Lind, Slocum and Hitchcock, after the imposition of the 30-day suspension pending termination of Mark Jennings but before the case proceeded through grievance and arbitration, Warden Wyant, the decision maker, flat out told Mark's union representatives that regardless of the fact that Wyant had agreed to a reduction of discipline for Koster and Huskey for the same or similar acts of misconduct, in this case there would be no reduction of discipline. This, coupled with the fact that plaintiff has established in the record that Warden Wyant, as well as Steve Wright, engaged in discriminatory statements towards Mexican-Americans in general and Mark Jennings in particular because of his Mexican-American heritage, precludes a granting of summary judgment in this case.

In addition, the Assistant Attorney General for IDOC continues to claim that plaintiff had not raised this issue in the pleadings and, therefore, was taken by surprise by plaintiff's response to the summary judgment motion. Plaintiff again takes exception to this and cites the court specifically to paragraph 7 of his Complaint, where Mark specifically alleged that he was being disparately treated and disciplined by the IDOC when compared to Caucasian employees, Mark Koster and Robert Huskey, who engaged

4

in same or similar misconduct and received suspensions rather than discharge, and further in alleging that the employer, IDOC, knew from past practice that the appropriate level of discipline for the first offense of engaging in trading and trafficking was, at most, a 30-day suspension.  Mark additionally alleged in paragraph 7 the disparate treatment of another Caucasian correctional employee, John Krupp, who was not investigated or disciplined for the similar acts of misconduct that the plaintiff was.  In fact, Warden Wyant informed the IDOC internal investigators in February 2002 that John Krupp had been accused of socializing with inmates and trading and trafficking by the same inmate who had accused plaintiff of socializing with inmates and trading and trafficking.  Yet, Warden Wyant proposed no discipline on John Krupp and failed to order an investigation of Krupp.

It should also be pointed out that the defendant has admitted that it is the employer of Mark Jennings (see answer to paragraphs 1 and 2 two the Complaint).  Regardless of what defendant's Affidavits may state, on summary judgment this court must construe facts favorably to Mark Jennings, and the Affidavits of Lind, Huskey and Slocum establish that Warden Wyant made the decision not to offer Mark Jennings a last chance agreement or a reduction of the discipline to a suspension rather than a termination. This is the classic question of fact not appropriate to summary judgment.  Therefore, when Warden Wyant, the person who has knowledge of past precedent concerning the level of discipline to impose for socializing with inmates and trading and trafficking, tells union

5

representatives that there is no way he will reduce the discipline he has imposed, it is

clear that the plaintiff has created a question of fact on the issue of  pretext in this case

and that summary judgment is inappropriate.

Respectfully submitted,

MARK JENNINGS, Plaintiff

By: /s/ Stephen T. Fieweger

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 36th Avenue
Moline, IL  61265
Telephone:  309-797-3000
Fax:  309-797-2167

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on _____, 2006, I electronically filed this instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

      William E. Jarvis
      Assistant Attorney General
      500 South Second Street
      Springfield, IL  62706

and I hereby certify that on _____, 2006, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

                   None

                   Respectfully submitted,

                   By: /s/ Stephen T. Fieweger

For:
KATZ, HUNTOON & FIEWEGER, P.C.
Attorneys for Plaintiff
1000 36th Avenue
Moline, IL  61265
Telephone:  309-797-3000
Fax:  309-797-2167

s:\wp\worddoc\11065001.20M